## THE IOWA STATE SAVINGS BANK V. JOHN S. BLACK, Appellant.

**State Bank: Ratification of Loan to Cashier: ESTOPPEL.** It can not be shown, to estop the bank from claiming that the action was illegal, that it was its custom to permit its cashier to loan to himself.

**Same: Instruction Construed: BURDEN OF PROOF.** The law presumes that such a loan is repudiated. In such a case, *there being no evidence of express ratification,* an instruction that there was no estoppel unless that act was "expressly ratified" means, simply, that defendant has the burden of furnishing clear and specific proof of ratification.

**Instructions: Needless Definition.** A charge need not define such words as "acquiescence," "ratification," "repudiation" and "adoption."

Evidence: Expert.  A cashier was asked with reference to an entry on the bank's books of a "cash item," to "state the meaning and effect of the item," and answered, "The effect of it would be that it represents just that much cash that ought to be there in the bank." *Held,* the testimony was proper to aid the jury to read the books properly.

Books of Account: Foundation: Practice.  An objection that books of account lack proper foundation, must be made when they are offered.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

SATURDAY, MAY 26, 1894.

IN 1890 the defendant was cashier of the plaintiff bank, located at Creston, Iowa.  John Gibson was at that time president of the bank.  The Gibson Investment Company was a corporation organized for the purpose of erecting a building at Creston, with a capital of thirty thousand dollars, divided into shares of one hundred dollars each, of which stock Gibson owned two hundred and eighty-seven shares, the defendant ten shares, and three shares belonged to unknown parties.  Gibson resigned his position as president, and, desiring to sell his stock in the investment company, it was purchased for an agreed price of eleven thousand dollars, and paid for substantially as follows:. The defendant gave to Gibson, on the books of the bank, a credit for the agreed price of the stock.  The shares of stock were placed in an envelope, marked "Cash item, fourteen thousand, three hundred and fifty dollars," and deposited in the cash drawer of the bank. The certificates of stock, as thus deposited, were indorsed in blank by Gibson.  The difference between the cost price of the stock and the cash it represented in the cash drawer, namely, three thousand, three hundred and fifty dollars was appropriated by the defendant, and on the evening of the day's transaction, to account for the eleven thousand dollars placed to the

credit of Gibson and the three thousand, three hundred and fifty dollars appropriated by defendant, the "cash item fourteen thousand, three hundred and fifty dollars" was carried to the teller's cash book. Other entries, not important to specify in this connection, were made in the books of the bank. The transaction was about September 1, 1890. In February, 1891, the then president of the bank committed suicide, which led to an examination of the affairs of the bank by the state auditor, which disclosed the transaction as to the stock, to some extent. In March, 1891, the defendant was succeeded by F. D. Ball as cashier, and later the discovery was made that defendant had appropriated to himself the three thousand, three hundred and fifty dollars as a profit in the stock transaction, and this action is to recover that amount, with other items. The defense to the claim is that the stock transaction was on the individual account of the defendant, and that the profits thereon belonged to him. Plaintiff aided its action by attachment, and defendant, by counterclaim, asks damage for the wrongful issuing of the writ. The jury found specially that the writ issued wrongfully, and returned a verdict for the plaintiff for two thousand, one hundred and thirty-three dollars and eighty-eight cents and from a judgment thereon defendant prosecutes this appeal.—*Affirmed.*

*Stone & Dawson* for appellant.

*Thomas L. Maxwell* and *James G. Bull* for appellee.

GRANGER, C. J.—I. On the trial, F. D. Ball, who was cashier of the bank, after disclosing the fact as to the item of fourteen thousand, three hundred and fifty dollars appearing in the books of the bank, was asked "to state to the jury the meaning and effect of the item." To the question, there was

an objection, which was overruled, and the witness answered that "the effect of it would be that it represented just that much cash that ought to be there in the bank." The complaint, in argument, is that the testimony was inadmissible, "because it gave the mere opinion of the witness, and his answer assumed as true that which was the subject of controversy in the case." The testimony enabled the jury to understand the import of the entries in the books, as made by the defendant. Such entries are not matters of common understanding and, without the aid of expert evidence, the books might be valueless as evidence to the jury. It was not the statement of a conclusion that it was the province of the jury to determine. The books were undoubtedly proper evidence. The testimony complained of, merely, enabled the jury to read them understandingly. The rule announced in *Smyth v. Ward's Ex'rs*, 46 Iowa, 339, and in other cases cited, is entirely without application. This conclusion disposes of other like questions.

II. There is complaint that the books of the bank were used in evidence without proper identification or proofs to show them competent under section 3658 of the Code. We do not find that such an objection was made when the books were offered. There are objections to some parts of the testimony relative to the books, but none that present the objection now argued.

III. The case presented the question of the ratification by the bank of the acts of the defendant, by which he claims that the transaction was his, and not that of the bank, so that the profits would belong to him; and on this branch of the case the court gave the following instructions: "9. In regard to this transaction, the defendant claims that he purchased said stock as an individual, and not as cashier, for himself, and not for the bank, for eleven thousand dollars; that he

borrowed the money of the plaintiff's bank to pay therefor, and that thereafter he sold said stock to plaintiff for fourteen thousand, three hundred and fifty dollars; and, further, that March 31, 1891, a final settlement between the plaintiff and defendant was had, and that the facts in regard to said transaction were fully made known to plaintiff; and that, with full knowledge of all said facts, plaintiff ratified and approved the same, and that thereby plaintiff is stopped from claiming thereon. The jury are instructed that if they find that at said time, or any time subsequent to the transaction, the plaintiff, with full knowledge in regard to all the facts in relation thereto, acquiesced in and adopted and ratified said transaction, then they are estopped from now recovering thereon, and on this issue you should find for defendant. 10. And, further, you are instructed that, as soon as the facts were known to plaintiff's directors, if they ever were known, it was their duty to either adopt the transaction or repudiate it; and, if they elect to repudiate it, they should repudiate it altogether. They can not repudiate it in part and adopt it in part. But as to all acts prohibited by law no affirmative act of repudiation is necessary. The law presumes that they are repudiated, and will not presume or infer an affirmance. Such acts, to estop plaintiff from recovery thereon, must be expressly ratified, and with full knowledge of all the facts in relation thereto; and the burden of proof is upon the party who relies upon a ratification of such unauthorized and unlawful act to prove that the principal, having such knowledge, acquiesced in and adopted and ratified such acts of its servant and agent." Appellant complains of the instruction in that, "the term 'expressly ratified' calls for a higher degree of action and a more definite specific performance than the law requires." A purpose of the instruction was to inform the jury as to plaintiff's rights and duties in

matters where the acts of the defendant were prohibited by law, and that, as to such matters, the law will presume that they were not acquiesced in or approved until expressly ratified. The phrase is not to be understood as requiring a ratification in terms, for there is no evidence of such a ratification. As a matter of fact, the bank did not, in terms, ratify defendant's act, and hence the jury must have understood that the instruction meant that the intent to approve the acts must have been plain or clear. With that view, the instruction is not erroneous. It is said that it is error to say of such acts that the law "presumes that they are repudiated, and will not presume or infer an affirmance." It is certain, in such a case, that the presumptions of the law are against ratification. The law will not presume that one person ratifies the unlawful acts of another. The instruction means no more than that, in the absence of proofs of an intent to ratify the acts of defendant, the presumptions of the law are against it. The law does not require one man to affirmatively repudiate the unlawful acts of another, or presume his approval or affirmance of them. Defendant asked instructions on the question of ratification, which, in view of those given, it was not error to refuse.

IV. It is said that the ninth instruction, above quoted, is erroneous, in that it "assumes that the transfer of the stock was made by Black to the bank, not when the settlement was made with him when he resigned, but prior thereto, when the plaintiff claims it was made." The instruction specifies no time when the transfer is claimed to have been made, further than that it was after the purchase of the stock, and the assumption is slight, if indeed there is any, that it was prior to the final settlement. In view of the evidence and the averments of the answer there could not possibly have been any prejudice from the instruction. In so

far as the particular date was material, the instruction stated it as after the purchase from Gibson, and left the fact of a more definite date for the jury to consider as it might appear to be from the evidence.

V. It is urged that the court erred in using the terms "acquiescence," "ratification," "repudiation," and "adoption" without definition or explanation. They are not words of rare use, nor are they technical terms applicable to any branch of learning or science, but words of common use, and commonly understood. As applicable to the case, the words were to have their usual and ordinary acceptation, and there is nothing to indicate that they were not properly understood.

VI. The court refused to allow the defendant to show a custom of the officers of the bank whereby the defendant had been permitted, from time to time since the organization of the bank, to make loans to himself, giving his notes or other securities as he thought proper. The object of the testimony was to prove that the officers of the bank had allowed defendant to make illegal loans to himself, and thus estop the bank from showing that the loan, now claimed by him, was not legal. The court, speaking of the defendant, said to the jury: "He had no right or authority, as such cashier, to loan to himself, as an individual, or to use in any manner for himself the funds of the bank, and all such acts are wholly unauthorized, and contrary to law." The instruction is but expressive of the statute law of the state regulating state banks, and the policy of the law is public. It can not, by any custom of the officers of the bank, be disregarded with impunity. The security of the bank against such practices is, in a very important sense, the security of the public in dealing with the bank. A design of the law was to prevent such loans being in any way made, and to permit the proposed showing by

defendant as an estoppel, would defeat a principle, if not the entire purpose, of the law. These considerations dispose of the argument of appellant in so far as it is directed to the particular assignments of error, and, as no error appears, the judgment is AFFIRMED.