# Moore v. Ensley.

*Bill in Equity to set aside and annul the Cancellation of a Deed of Trust and Bonds secured thereby.*

1. *Power of proxy to bind principal; extent of authority.*—A proxy given by the executrix of a stockholder of a corporation, for the purpose of representing her testator's estate at a meeting of the stockholders of the corporation, is limited to the powers and duties of stockholders; and any act or agreement, done or entered into by the proxy, affecting the interests of the estate as a creditor of the corporation, is not binding upon the executrix, unless subsequently ratified by her.

2. *Ratification of an unauthorized act; acquiescence; burden of proof.* Ratification of an unauthorized act, to be binding, must be made with full knowledge of all material facts; and when a party relies upon ratification by acquiescence, the burden is upon him to prove it—knowledge of all material facts being an essential element thereof.

3. *Same; case at bar.*—A bill filed by an executrix to enforce the rights of the estate of her testator, who was her husband, which alleges that she was a young woman twenty-four years of age, unacquainted with business affairs and knowing practically nothing of her husband's interests at the time of his death, that she was grief-stricken, sick and unable to attend to business for a long time. after her husband's death, that the unauthorized act sought to be made binding upon her was that of her proxy, a young man unacquainted with business affairs, who acted under the instructions of the president and secretary of the corporation, an interest in which complainant was seeking to enforce, that the information she received from them in regard to her husband's interest was misleading, that such interest involved

[Moore v. Ensley.]

many thousands of dollars and that she did not become acquainted with the real facts until 35 or 40 days before the suit was instituted, does not show ratification by acquiescence.

4. *Same; knowledge of agent; when not binding on principal.* — In such case, where the agent acquired knowledge of the facts before the power of attorney, giving him authority to act, was executed, such knowledge is not binding on the principal, since there was no duty to communicate information so acquired.

5. *Same; acceptance of benefits; when not a ratification by an executrix.*—Where the stockholders of a corporation, who were the owners of bonds secured by a deed of trust upon the corporate property had the same cancelled and marked satisfied, the executrix of a deceased stockholder, being represented in such matter by an unauthorized agent, the transaction is not binding upon her; and the subsequent action of the stockholders, the executrix being represented as before, in causing a new issue of bonds to be secured by deed of trust upon the corporate property, and the acceptance by the executrix of a portion of the bonds of such new issue, which were delivered to her as collateral security for money advanced by her testator to the corporation during his life time, is not a ratification of the unauthorized act in cancelling and satisfying the first issue of bonds.

6. *Rights of executor of creditor of a corporation to assert the liability of purchase money bonds; not affected by acceptance of bonds subsequently issued.*—The acceptance, by the executor of a creditor of a corporation, of corporate bonds, purporting on their face to be first mortgage bonds, and retention thereof after learning that such bonds were secondary to purchase money bonds held by his testator for another claim due from the corporation, do not prevent the executor from asserting the priority of the purchase money bonds; the rights of *bona fide* purchasers for value not intervening. ·

7. *Abatement of purchase money for defective title; cross-bill.*—Where a testator obtained stock and bonds from a corporation as the consideration of the sale and conveyance of property, to a part of which there was a failure of title, the corporation may have an abatement of the purchase money to the extent of such failure of title, which may be obtained by cross-bill in a suit filed by the executrix to enforce the rights of her testator, if not tendered in the original bill; but such failure of title does not justify a repudiation of the contract of sale by the purchaser, or preclude the vendor's personal representative from enforcing his security for the payment of the purchase money for the property as to which there was no failure.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellee, Mary L. B. Ensley, as executrix of Enoch Ensley, deceased, against the Lady Ensley Coal, Iron & Railroad Company, and against the appellant, Walter Moore and sev-

[Moore v. Ensley.]

eral other parties who were alleged to be holders of the bonds of the Lady Ensley Coal, Iron & Railroad Company. The facts of the case, as shown by the averments of the bill, are sufficiently set forth in the opinion.

The prayer of the bill was that "on the final hearing of the cause complainant prays that the entry of satisfaction and payment of said mortgage deed of trust, as made and executed by said Central Trust Company for $1,500,000, on the records of the probate offices of the counties of Colbert, Franklin, Marion, Fayette, Walker and Jefferson, be set aside and cancelled and decreed to be void and of no effect; that the said mortgage deed of trust be re-instated and decreed to be in force and an existing lien on said property of said defendant Ensley Company embraced in said mortgage, to the extent of the amount of bonds or money which may be found to be due to the estate of said Enoch Ensley, that said bonds be considered by the court as an existing liability or evidence of indebtedness of said company, as they were intended to be, as though the same had not been destroyed; and that said new bonds since issued for $500,000, secured by a second mortgage on said property, and said second mortgage shall be decreed to be subordinate to the lien of the said first bonds and mortgage, and that said first mortgage deed of trust shall be declared and decreed to be a first lien on the property embraced therein; and that an account be taken by the register of this court to ascertain the amount due to complainant as the executrix of the estate of said Enoch Ensley, and a decree in favor of complainant, as such executrix, shall be duly rendered for such amount, and that said mortgage deed of trust securing the same may be foreclosed, and a sale of said property be ordered to satisfy said decree; and that said Central Trust Company, of New York, and said defendants, the Merchants National Bank, Union & Planters Bank, Continental National Bank, and Memphis National Bank, R. B. Snowden, Walter Moore and Napoleon Hill, who now hold said bonds in pledge as collateral security for debts claimed to be due them, may be enjoined from foreclosing, and from attempting or taking any steps to foreclose the said second mortgage of May 25, 1892, securing said issue of $500,000 of bonds, either by sale under any power in said mortgage or by a suit in equity, and

from taking any steps, as such bondholders or trustees, to obtain possession of the property embraced in said mortgage ; and that said defendant and bondholders be enjoined from transferring, assigning, delivering, selling or otherwise disposing of said bonds, or any of them, or in any manner modifying or changing or affecting their status so as to allow or permit the intervention of any other persons claiming to be innocent holders or purchasers of said bonds for value, and without notice of the equity asserted in this bill of complaint.

"And complainant further prays that, if she is mistaken in praying for the relief hereinbefore prayed for as to a foreclosure of said mortgage deed of trust as an existing trust deed, and as to having said bonds considered and treated as though the same had not been cancelled and destroyed, then complainant prays that either said mortgage deed of trust, or the proceedings and resolutions of said stockholders authorizing the execution and delivery of a mortgage to secure the payment of said bonds, shall be treated and considered as, and decreed to be, an equitable mortgage on the property embraced in said cancelled mortgage, as an equitable lien upon said property to secure the payment of the balance of the purchase price of said property. And that said equitable mortgage may be foreclosed and said property sold to discharge the same ; and complainant also prays that, inasmuch as many suits are pending in this court against the said Lady Ensley Company, affecting the said property and claiming various rights, demands, liens and equities, and also the suits of Horse Creek Coal & Coke Company against said Lady Ensley Company, and Mag-Ellen Coal & Mining Company against said company, in the chancery court of Walker county, Alabama, each of said last named suits claiming a lien of some kind on part of said property, and many creditors of said Lady Ensley Company have intervened in said suits, and all of said property is in custody of this court through its receivers heretofore appointed, your honor will consolidate all said suits with this suit of your complainant, so that the conflicting rights and equities of all persons may be properly adjusted ; and your complainant also prays for such other, further or general relief as she may be entitled to, and as to you may seem right and proper."

[Moore v. Ensley.]

The defendant, Walter Moore, who is the appellant on this appeal, filed a separate demurrer to the bill, and for grounds of said demurrer assigned the following :

"1. That it appears from the said bill that Enoch Ensley subscribed for certain stock and bonds in the Lady Ensley Coal, Iron & Railroad Company, to be paid for in certain designated and described property, and it also appears from the said bill that the said Enoch Ensley, during his life-time, never complied with the said contract of subscription ; on the contrary, it appears that the title to a part of the property wholly failed, and that as to another part of the property the same was never delivered, and the bill contains no offer on the part of the complainant to have delivered or have made good to the Lady Ensley Coal, Iron & Railroad Company the amounts which it appears it has lost by reason of the failure of the said Ensley to comply with the contract on his part. 2. That the contract of subscription on the part of Enoch Ensley is shown by the bill never to have been complied with, and complainant fails to offer to comply with the same. 3. That until the said Enoch Ensley, or complainant, as his executrix, has complied with the contract of subscription made by him, she is not entitled to any stock or bonds in the said Lady Ensley Coal, Iron & Railroad Company as against this defendant, who fully complied with the terms of his subscription. 4. That it is shown by said bill that this defendant was a subscriber to the capital stock of the Lady Ensley Coal, Iron & Railroad Company, and it appears by said bill that this defendant has in all things complied with his contract of subscription, and that the said Enoch Ensley has wholly failed to comply with the contract of subscription made by him, and the bill does not show that the estate of Enoch Ensley is able or willing to do equity by making good the contract of subscription made by the said Enoch Ensley. 5. That it appears from the bill that the complainant is, in effect, seeking to reinstate and enforce the mortgage for $1,500,000, pursuant to the terms of the original contract of subscription, made by her testator, that the estate of her testator owns and holds a majority of all of the capital stock of the corporation ; that the original contract of subscription was never carried out or performed by her testator, and that thereafter the stock-

holders of the Lady Ensley Coal, Iron & Railroad Company, with the consent of the agent of the complainant, cancelled that part of the original contract of subscription which authorized the issue of the bonds, and authorized the issue of the bonds under the $500,000 mortgage ; that the complainant accepted the bonds under the last mentioned mortgage, and, with full knowledge of the fact that this first mortgage had been cancelled of record, retained and still retains the said bonds so received by her and makes no offer to surrender the same, except upon condition.  6. That it appears from the said bill that the complainant has accepted a part of the fruits of the transaction alleged to have been illegal and wrongful, and that she continues to hold and retain these fruits with knowledge of all the facts.  7. That it is not averred in said bill that the complainant did not have the benefit of the advice of counsel, nor is it shown why she was ignorant of the facts of which she avers she was ignorant, nor is it shown why she could not have discovered them, nor is it shown how, or by what means, or when she discovered them.  8. For aught that appears in the bill, complainant was fully advised by counsel learned in the law as to every step that was taken in connection with the Lady Ensley Company.  9. That it appears from said bill, that at and before the same was filed, complainant knew all the facts therein alleged, and with full knowledge she has held and retained eighty of the bonds secured by the  mortgage made May 25, 1892, which purport on their face to be first mortgage bonds, and secured by a first lien on the property of the Lady Ensley Company.  10. That upon discovering the facts alleged in the bill, complainant was bound to elect to affirm or repudiate the said mortgage for $500,000 in its entirety, and by her said bill she has elected to affirm said mortgage.  11. That said bill is wholly inconsistent in this, that complainant seeks to affirm said mortgage for $500,000, so far as the same is advantageous to the estate of her testator, and repudiate it in part.  12. That it appears from said bill that complainant, since the death of her testator, has been in control of almost the entire capital stock of the Lady Ensley Company, with full power to elect directors and agents of her own selection, and for aught that appears in said bill, complainant did select and elect directors and agents of said cor-

poration, since the death of her testator, and such directors and agents so selected by her had full knowledge and notice of all the matters complained of by her. 13. That it appears from said bill that all of the facts alleged in said bill, of which complainant now complains, are matters of record in the corporate records of the Lady Ensley Company, to which complainant had access, and it is not averred nor shown why complainant did not ascertain the facts now averred, nor does the bill show when her counsel first obtained information of the facts now alleged, nor why they did not obtain such information."

On the submission of the cause upon this demurrer, the chancellor decreed that the grounds thereof were not well taken, and overruled them. From this decree the present appeal is taken, and the same is assigned as error.

ALEX T. LONDON, for appellant.—The complainant can not maintain the bill in this case. The bill seeks to have the specific performance of the original contract of subscription decreed and enforced in favor of the complainant. There is not only no offer to perform the contract on her part, by paying the value of the property, which had been accepted by the corporation in payment of her testators's subscription, and which was lost to it, but the bill does not even contain a suggestion that the complainant is able to perform the contract on her part. The rule is universal, that specific performance will never be awarded to a party who has not fully performed the contract on his part, unless the bill contains an offer to perform it. In fact, in case of a sale, a tender of the purchase money found to be due the vendor is an essential prerequisite.—Fry on Specif. Perf., 474. The rule as stated by Mr. Pomeroy, in reference to the duty of the complainant to do equity is, "the complainnat, whether purchaser or vendor, is compelled to perform his part of the agreement as a condition to his obtaining relief against the defendant."—1 Pom. Eq., § 392. And he again declares that the doctrince is fundamental "that the party seeking performance must do or offer to do, all that is required of him. 2 Pom. Eq., § 1407 ; Jenkins v. Harrison, 66 Ala. 345. If the satisfaction of the mortgage, in several counties, is

[Moore v. Ensley.]

to be cancelled on the ground, as averred, that the same was a fraud upon the complainant, and restore the parties to the position they occupied before the fraud was committed, then there must be an offer to do equity.—2 Pom. Eq., p. 1285, § 910.

Even if the complainant was entirely ignorant of the purposes for which the proxy was given to Hodgson, and she knew nothing of Hodgson's actions under this proxy, or if the agreement to cancel the $1,500,000 of the bonds, until some time after, the bill does not aver facts which entitled the complainant to relief by reason of this ignorance, because it is not definitely shown by the averments of the bill when the complainant discovered these facts. When the facts became known to the complainant, it was her duty then and there promptly to disaffirm, and disaffirmance means that she was compelled to surrender all of the benefits that she had received under the contract made by her agent, as alleged, without any authority from her.—2 Pom. Eq., §§ 897, 917; *Grymes v. Sanders*, 93 U. S. 55; *Lockwood v. Fitts*, 90 Ala. 150. She was bound to elect whether she would take the bonds or not. If she accepted them, she is estopped to claim against the conveyance.—*Bell v. Craig*, 52 Ala. 215. The bonds and mortgage upon their face purport to be a first lien on the property. The complainant accepted eighty of them for a debt due to her testator's estate. She not only kept them up to the time that she discovered the facts, but still holds them and still asserts her right to them, and asks the court now to declare, and the court has held, that they are in effect second mortgage bonds. If a party adopts a part of a transaction, he adopts all. He must reject it entirely if he desires to obtain relief against it.—2 Pom. Eq. §§ 916, 917; 2 Herman Estop., § 1039; *Robertson v. Bradford*, 73 Ala. 116; *Woodstock Iron Co. v. Fullenwider*, 87 Ala. 584; *Creamer v. Holbrook*, 99 Ala. 55; *Oden v. Dupuy*, 99 Ala. 36; *Adams v. Adams*, 39 Ala. 603; *Reaves v. Garrett*, 34 Ala. 558.

When a person disaffirms a transaction, he must restore to their former condition those who have sustained injury by reason of such disaffirmance, as a condition precedent to obtaining relief.—*Kisterbock's Appeal*, 51 Pa. St. 483; *Briggs v. Rice*, 130 Mass. 50.

The complainant ratified the issue of the $500,000

bonds. "One who voluntarily accepts the proceeds of an act done by one assuming authority, though without authority, to be his agent, ratifies the act and takes it as his own with all its burdens as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole." Mechem on Agency, § 148; *Abbott v. May,* 50 Ala. 97, Where the owner of a mortgage voluntarily accepts the proceeds of an unauthorized discharge of it, the discharge was held to be ratified.—*Tooker v. Sloan,* 30 N. J. Eq. 394..

JAMES WEATHERLY and WALKER, PORTER & WALKER, *contra.*—A corporation is a legal entity, distinct from its corporators ; and the transaction between Enoch Ensley, as subscriber, and the Lady Ensley Coal, Iron & Railroad Company, must be treated as a trasaction between two distinct persons, each of whom was *sui juris,* and competent to deal and contract with one another.—*Moore & Handley Hardware Co. v. Towers Hardware Co.,* 87 Ala. 210 ; *O'Bear Jewelry Co. v. Volfer,* 106 Ala. 205.

The contract of subscription and for the sale and conveyance of the property in excess of the par value of the stock subscription, being one and the same transaction and one entire contract, it can not be avoided in part, and accepted in part, nor can it be avoided in whole without restoring to the owners thereof the property conveyed under such contract. If one be induced by the fraudulent representations of the mortgagor to deliver up the mortgage, with the mortgage note, the mortgage may be still foreclosed, if no one has afterwards acquired an interest in the property relying upon the discharge. *Lovell v. Wall,* 12 So. Rep. (Fla.) 659 ; *Grimes v. Kimball,* 3 Allen (Mass.) 518 ; *Freeholders v. Thomas,* 20 N. J. Eq. 39 ; Jones on Mortgages, § 966.

One who purchases with notice of prior recorded mortgage, which has been cancelled without authority, purchases subject to the lien of such prior mortgage. *Foster v. Paine,* 63 Iowa 85. Entry of satisfaction of mortgage on the records, made without authority, is void.—*Bell v. Wilkinson,* 65 Ala 477 ; *Eagle v. Hall,* 45 Mich. 57 ; *State v. Greene,* 101 Ind. 532 ; *DeLaureal v. Kemper,* 9 Mo. App. 77. The entry of satisfaction upon a mortgage record, is no protection to a person claiming

to be a *bona fide* purchaser, when made without authority. *Woodruff v. Mutschler*, 34 N. J. Eq. 33; *Scott v. Field*, 75 Ala. 419.

Where one holding the first mortgage releases the same of record, for the purpose solely of giving priority to a second mortgage held by another, the first mortgage still subsists as between the parties and may be foreclosed.—*Wood v. Wood*, 61 Iowa 256; *Phelps v. Fockler*, 61 Iowa 340. When a mortgage is released to enable the execution of a second mortgage, with an agreement that the original shall stand as between the parties, a third person taking a mortgage with notice of the first mortgage, has a subordinate lien to the first.—*Farmers Bank v. Buttterfield* 100 Ind. 229.

A general proxy to vote at a corporate meeting of stockholders does not confer power to vote for a dissolution of the corporation, nor for any but the ordinary business of the corporation.—Cook on Stocks & Stockholders, §§ 610 *et seq.*

The purchaser of a mere equity is not an innocent purchaser, nor one who does not part with a valuble consideration.—*Overall v. Taylor*, 99 Ala. 12. One who takes bonds as collateral security for a pre-existing debt is not an innocent purchaser, even though extension or indulgence be given to the pledgee on his debt.—*Reid v. Bank of Mobile*, 70 Ala. 199, and cases cited.

Where a mortgagee or trustee, under a trust deed, has information that a prior mortgage, or trustee, has released the property from the mortgage or trust, without payment of the notes, or their surrender, or express authority from the holder of them, he will take the propirty subject to any equitable right of the holder of the notes to secure the payment of which the first mortgage or deed of trust was executed.—*Insurance Co. v. Eldridge*, 26 L. Ed. U. S. Rep. 245; 24 *Ib.* 706; 20 *Ib.* 167.

Estoppels are protective only, and are to be invoked as shields, and not as offensive weapons. Their operation in all cases should be limited to saving harmless, or making whole, the person in whose favor they arise, and they should not, in any case, be made the instrument of profit or gain.—*Lindsay v. Cooper*, 94 Ala. 170, s. c. 16 L. R. A. 813, notes; *Thompson v. Campbell*, 57 Ala. 188; *Nelson v. Kelly*, 91 Ala. 569. A party will be relieved in equity from a written agreement of release given

without consideration, and attended by circumstances of fraud or imposition.—*Cleere v. Cleere,* 82 Ala. 581.

HEAD, J.—In November, 1890, the Lady Ensley Coal, Iron & Railroad Company was organized as a mining and manufacturing corporation, under the general laws of this State, with an authorized capital of three million dollars, divided into 30,000 shares of one hundred dollars each. Twenty thousand shares were subscribed for, as follows : by Enoch Ensley, 19,000 ; Martin Ensley, 350 ; Thomas D. Radcliffe, 330, and Walter Moore, 320 shares. These persons combined, but in different interests, owned large separate mining and iron manufacturing properties, valued at $3,500,000. The said Lady Ensley Company was really organized with the view of acquiring these properties, and combining and operating them under one general management. The ownership in these properties, of each of said above named subscribers, was, in value, in the proportion which the number of shares taken by him bore to the whole number of shares subscribed for, viz., 20,000 shares. By regular and orderly proceedings and agreements duly and legally entered into and carried out, these subscribers sold the said properties to the company at the price of $3,500,000, of which $2,000,000 were applied to the payment in full of their said stock subscriptions, and for the remainder, to-wit, $1,500,000, the company agreed to issue and deliver to the vendors fifteen hundred twenty-year, five per cent. bonds, of the denomination of $1,000, and to secure the same by mortgage deed, to the said properties, to be executed to the Central Trust Company of New York, as trustee. The bonds, when issued, were to be distributed, ratably, to the said vendors, each to receive $750 of bonds to each $1,000 of stock owned by him. The stock was entered upon the stock books of the company, to the credit of the several owners, as fully paid stock ; the bonds and trust deed were duly executed and delivered to the Central Trust Company and the properties were conveyed to the company. The mortgage was recorded in the several counties of Alabama, wherein the properties lay. Without distribution of the bonds to those entitled to them, and while they were yet in the hands of the Central Trust Company, Enoch Ensley, the principal stockholder and

creditor, to-wit, on November 18, 1891, died, and his widow, the complainant in this bill, became the executrix of his will. She resided in Memphis, Tennessee, where her husband lived at his death. In March thereafter, she executed a paper as follows :

"This is to witness that I hereby nominate, constitute and appoint J. H. P. Hodgson my attorney in fact, and agent to represent me and to vote the stock held by me, as executrix of Enoch Ensley, deceased, of the Lady Ensly Coal, Iron & Railway Company, at a meeting of the stockholders of said company, to be held at Sheffield, Alabama, on March 16, 1892.

"     [Signed]  MARY L. B. ENSLEY, Executrix."
"Witness :
    "B. B. BEECHER,
    "HENRIETTE E. HODGSON."

Hodgson was her step-son-in-law, and had become a stockholder and director of the company. A meeting was held at the time and place designated, and Hodgson attended and acted under this proxy. The only business transacted, was the adoption of the following preamble and resolution : "Whereas, we deem it best for the welfare and interest of this company that the mortgage of date February 2, 1891, heretofore made to the Central Trust Company of New York, as trustee, and now on the records of five counties in the State of Alabama, as well as the $1,500,000 of bonds secured therein, and now in the hands of the Central Trust Company, having never been used or negotiated, should be cancelled and annulled, and thus remove an incumbrance on the properties of the Lady Ensley Coal, Iron & Railroad Company ; now, therefore, be it *resolved*, that the board of directors of this company be and are hereby authorized and requested, to take such action as they deem best to have said mortgage and bonds cancelled, and to have such cancellation properly appear on the records of said five counties in Alabama in which said mortgage has been recorded."

About the same time, the following paper was executed by the parties whose names are signed thereto— the said Hodgson signing the name of Mrs. Ensley, under no other than the authority conferred by said proxy :

[Moore v. Ensley.]

"SHEFFIELD, ALA., March 16, 1892.

"We, the undersigned, owners of bonds and stock of the Lady Ensley Coal, Iron & Railroad Company, agree that the mortgage heretofore made by the Lady Ensley Coal, Iron & Railroad Company, of date February 2, 1891, and bonds therein described, shall be cancelled and annulled, with the view and purpose of the said company of disencumbering the said company of such mortgage and bonds: and we authorize and ask the board of directors to procure such cancellation. Each of the undersigned to retain in lieu of our said bonds so cancelled our respective interest in the properties of the company.

| Shares. | (Signed) |
|---|---|
| 19,000 | MARY L. B. ENSLEY, Executrix, By J. H. P. HODGSON, proxy. |
| 300 | WALTER MOORE, |
| 350 | MARTIN ENSLEY, |
| 300 | THOS. D. RADCLIFFE, |
| 30 | W. M. SNEED, |
| 20 | J. H. P. HODGSON." |

20,000.

Thereafter, the Trust Company destroyed the said bonds, cancelled the mortgage, and entered upon the records where it had been recorded, acknowledgment of satisfaction thereof by the payment of the debt secured thereby. It is not pretended that this was done otherwise than by the authority of the said resolution and agreement, there having been, in fact, no payment or other satisfaction of the bonds. The main purpose of the bill, which is filed by Mrs. Ensley, as executrix, is to re-instate and enforce the bonds and mortgage.

Without undertaking to ascertain the meaning of the said agreement of March 16, and the resolution to which it is related, we will assume that they mean something, and, if binding on the complainant, effectuated something; and will proceed to inquire whether or not, upon the averments of the bill, they do bind the complainant.

We think it cannot be open to serious doubt that the proxy given by Mrs. Ensley to Hodgson did not confer upon him authority to adopt the said resolution, or to execute the said agreement. The resolution, in its for-

[Moore v. Ensley.]

mal and technical import, is a novel one. Considered as emanating from a meeting of corporate stockholders, it is, in effect, a declaration by a mortgage debtor, that it, *the debtor*, deems it best for its welfare and interest, that its mortgage and bonds thereby secured be cancelled and annulled, and removed as an incumbrance on its property; and an order to its directors to proceed to have it done. It is apparent, of course, that such a declaration, considered as the act of a debtor, is, without more, utterly nugatory. Without the concurrence of the creditor, it is impossible of execution. When a meeting of stockholders of a body corporate is called, or convenes in regular session, the presumption is that they meet to transact the business of the company in their capacity as stockholders, and within the limitations of that capacity. They meet to perform strictly corporate functions, done in the legitimate prosecution of the corporate enterprise. They can lawfully act in such meeting in no other character than as stockholders; and any act done, affecting the rights of those absent, not assented to, which is without the scope of corporate business and authority, is utterly void as to the affected party, not assenting. When, therefore, the meeting of the stockholders of the Ensley Company of March 16th was approaching, and Mrs. Ensley gave to Hodgson her proxy, she gave him warrant only to represent her *as a stockholder*, and only to do, for her, those things which pertained to the authority of stockholders, as such.

The meeting, in question, in realty, was not a stockholders' meeting, when tested by what was done. No corporate function whatever was performed, unless it be that corporate assent to the cancellation of the bonds and mortgage, by the creditors, was manifested by the action taken. It was, essentially, a meeting of creditors of the company, acting solely upon the subject matter of their securities. Those present, it is true, were stockholders and (including Mrs. Ensley, if she had been legally represented) owned all the stock; but that fact only shows the inducement and consideration upon which, *as creditors*, they mutually agreed to release their claims. We emphasize: The act done, and now the subject of complaint, was the release of the debtor from an existing indebtedness; and it would be absurd to say that representatives of the debtor (stockholders) acting in their

[Moore v. Ensley.]

capacity, as such, could do the act. If the creditors who alone could effectuate it, happened to be also the representatives of the debtor, their act in creating the release must necessarily be attributed to their character as creditors. Mrs. Ensley did not empower Hodgson to attend a creditors' meeting and represent her interests as creditor, and nothing he could do affecting her rights as a creditor would bind her at all, unless she subsequently ratified it. If I, being a stockholder of a corporation, and also a creditor, give A. my proxy to represent me in stockholders' meeting, it would be shocking to hold that he could lawfully represent me and vote away my rights as a creditor.

So, the question is, whether the bill shows Mrs. Ensley afterwards ratified the acts of Hodgson?

The bill gives substantially, the following history : When Mrs. Ensley became executrix, she did not know of the various transactions of, and touching, the Ensley Company, whereby her testator had become entitled to these bonds, or to payment for the purchase price of property conveyed by him to the company ; and did not learn of the same until about the middle of September, 1894, say 35 or 40 days before she filed this bill. She was twenty-four years of age at her husband's death, and had no knowledge of practical affairs, and knew very little concerning the business interests and dealings of her husband. · For a long time after his death, she was stricken with grief and confined to a bed of sickness ; and being entirely ignorant of the rights of the estate in reference to said purchase money and bonds, and being unable to attend to any business, or to properly understand and appreciate her duties as executrix, she signed and executed the said proxy to Hodgson, while in bed, at her home in Memphis. She says, moreover, that Hodgson was a young physician, who had married a daughter of Mr. Ensley by his first wife, and was, himself, ignorant as to business affairs, and did not know the rights of the estate in regard to said bonds and mortgage, and that in all he did, at said meeting, he was prompted by, and acted under the advice and instructions of, one W. M. Sneed, a Memphis lawyer, who had become president of the company, and Thomas D. Radcliffe, the secretary. She says, also, that Sneed was in close business relations with certain Memphis banks

[Moore v. Ensley.]

and individuals who acquired nearly a half million dollars of mortgage bonds of the company, issued shortly after said release was affected, to which reference will presently be made; that he was a brother-in-law of the president of one of said banks, and was the agent and factor of the Ensley Company, as well as of said banks and individuals, in the negotiations which resulted in the acquisition of the bonds by them.

The bill contains the following allegations: "Complainant knew, and states it as a fact, that said Enoch Ensley had, by his own money, brains and industry, acquired the property which afterwards went into the possession of the corporation (which he had caused to be created) designated as the Lady Ensley Coal, Iron & Railroad Company, and which was sold to the Ensley Company. She had known also that he had acquired other large and valuable properties, or a large interest in them, and that it was his purpose to put them all into one vast aggregate, so that they might be more economically as well as profitably and largely developed. She had always regarded these properties as her husband's private property, which had been bought and collected together, and was to be developed by his money and brains; and she knew no 'corporation' in the business, and had no reasons to suppose that any 'corporation' owed him anything. She was utterly ignorant, not only of the facts whereby said Ensley Company was organized as a corporation and acquired said properties, but of the said Enoch Ensley's claims and demands against said corporation.

"It was mentioned to her when she was stricken down and sick, and unable to think and care for such things, that there were a mortgage and bonds which were to be cancelled, and that new ones were to be issued, to save the credit of the company, but only a small portion of them were to be used, and that the total indebtedness of the company was only about $200,000, including the debt of $41,000 to the estate for money advanced and loaned by said Enoch Ensley to said company; and that there was enough iron on the company's premises in Russellville to pay off a large part of this indebtedness; and complainant was led to suppose that this $1,500,000 mortgage, and the bonds secured thereby, were merely the evidence of an unfinished and incomplete transac-

tion; that no money had been advanced on them, no rights had become attached to or vested in them, and that therefore no one could be harmed by their cancellation and destruction, which would be merely like the tearing up of an uncommunicated letter. She did not know the connection of the Central Trust Company with the matter, nor even the fact that the mortgage had been recorded. She only knew that there were a mortgage and bonds, but did not know that the bonds or mortgage had been used, or delivered to any one; but under such circumstances as these she gave the proxy to said Hodgson to vote the shares standing in her name on the books of the company as executrix of said Enoch Ensley's estate, and under such circumstances she subsequently gave the power of attorney and proxy to said Hodgson, presently to be explained."

On May 23, 1892, Mrs. Ensley executed to said Hodgson a written appointment, as her agent and attorney in fact, to represent her and vote her stock held, as executrix, in said company, at a meeting of stockholders to be held at Russellville, Alabama, on May 24, 1892, confirming and ratifying all votes and acts given and agreed to, in matters appertaining to the business of the company, at such meeting, as fully and effectually as if she were personally present and consented thereto. This meeting was held; Hodgson represented her; an issue of $500,000 of bonds, secured by mortgage on all the company's property to be executed to said Central Trust Company, as trustee, was authorized, and the bonds and mortgage were subsequently issued and executed. It is stated in the briefs of counsel on both sides, that these bonds appear, upon their faces, to be the first mortgage bonds of the company, though the omission from the transcript, by agreement, of the exhibits to the bill, leaves the fact not shown by the record before us. $400,000 of these bonds, the bill avers, were pledged by Sneed or Radcliffe with certain named New York and Memphis banks and certain named individuals, who are made parties to the suit, as collateral security for the payment of existing debts of the company. The averments fully deprive these holders of the bonds of the character of *bona fide* holders, for value, without notice of prior equities. It is averred that twenty of said bonds ($20,000) were delivered to defendant, Walter Moore,

and that he, or one of the other defendants resident in Memphis, has possession or control of them. Eighty of said bonds ($80,000) were delivered to the complainant by said Radcliffe, to secure the estate, so she was informed, and so she supposed, for a debt of $41,000 due to it by said company, for money loaned, and which was otherwise unsecured. At some time prior to the present suit, complainant brought a suit in the court below having reference to said claim of $41,000; but when brought, what its nature and how disposed of, do not appear. The complainant offers to surrender these 80 bonds, to be disposed of as the court may see proper, provided such surrender is deemed necessary to the relief she seeks.

It is remembered that there is here, no question of vacating the acts of Hodgson as having been wrongfully induced for we have seen that they were not the acts of the complainant, through a lawfully authorized agent; and we have given the above stated history as constituting the facts which counsel earnestly contend show ratification by the complainant.

In order to ratification, knowledge of all the material facts essential to intelligent action on the part of the party ratifying is necessary. When based upon omission to act, it involves acquiescence, and of course, there is no acquiescence without knowledge. Ratification is not presumed. It is matter which must be affirmatively alleged and proved by him who relies upon it. The principle that where a party, *prima facie* chargeable with lapse of time as *laches*, relies upon ignorance of facts to repel *laches*, he must clearly allege and explain his ignorance of the facts, and how and when he learned them, cannot apply when the charge is ratification of an unauthorized act, by acquiescence. Until it is alleged and shown against him, that he knew of the unauthorized act done for him, he is not called upon to state or show anything in reference to it. The burden, we repeat, is upon him who relies upon acquiescence, to allege and prove it. Without commenting upon the facts, all of which are above substantially set out, it is enough to say that they show, practically, no act of ratification, and absolutely no knowledge, on the part of complainant, which would render her omissions to act a ratification, until 35 or 40 days before the filing of the bill.

[Moore v. Ensley.]

The authority given by her to issue a half million of bonds, and her acceptance of some of them to secure a debt, though they appear on their face to be first mortgage bonds, did not affect her right to insist upon her after discovered priority; nor did the fact of her retaining the bonds, after learning the facts, affect her right to insist on her priority. She had the right to retain them as security of the debt for which she received them, secondary to the prior purchase money mortgage; and so far as appears by the bill, it was not necessary that she offer to surrender them. If the company owes the debt for which she receives them, they are her property, though the prior purchase money bonds and mortgage be reinstated, and take precedence over them.

We think one situated as the complainant was, could not well have been expected to prepare and file a suit of this character, magnitude and importance, in less than thirty-five to forty days after discovering her rights, and that there is no element of *laches* or ratification involved in that delay. There was in it, no evidence of an intention to abide by the release; no injury accrued to any one from it. If it be said that Hodgson was informed of the previous existence and cancellation of the purchase money bonds and mortgage, when he represented complainant under the power of attorney of May 23d, and voted for the $500,000 of bonds, as first mortgage bonds, thereby recognizing the prior cancellation, it is a sufficient answer that his information was acquired before that power of attorney was executed, and hence possessed at and before he acted in execution of the power. He was under no fiduciary duty to communicate to his principal information so acquired.

To the extent that there was a failure of title to any of the property sold by complainant's testator to the company, the latter may have abatement of the purchase money. Probably a cross bill is necessary, if the abatement be not tendered by the complainant in the original bill. Surely, the vendor will not be barred of enforcing his security for the purchase money, at all, because there was a failure of title to a part of the property sold. Equitable abatement, in such cases, accomplishes ample justice.

It is unnecessary to construe the resolution and agreement, adopted and signed by Hodgson, in March, 1892,

since we hold, upon the allegations of the bill, that the complainant is not bound by them.

There is no error in the decree of the chancellor, and it is affirmed.