*Joseph B. & Bryan Cumming,* for defendant.

---

4865. OKLAHOMA ASPHALT, PAINT & ROOFING CO. *v.* PHILLIPS.

RUSSELL, J. 1. One who lends money to a corporation upon the note of an officer of the corporation, who is authorized to execute the note, is not bound to follow the fund and to see that the corporation actually receives the money from its agent who executed the note.

2. The rights of one who in good faith has parted with his money upon the strength of collateral deposited with him by an agent of a corporation, authorized to borrow the money to secure which the collateral is deposited, will be protected as against the effort of the corporation to recover the collateral by trover, especially when it appears that the corporation did in fact receive at least a portion of the money. In such a case trover is not available as a remedy to recover the collateral.

*Judgment affirmed.*

DECIDED OCTOBER 31, 1913. REHEARING DENIED FEBRUARY 4, 1914.

Trover; from city court of Thomasville—Judge W. H. Hammond. March 20, 1913.

The action was by the Oklahoma Asphalt, Paint & Roofing Company against P. D. Phillips, for the recovery of certain bonds of the Parker Asphalt Roofing Company, alleged to be of the value of $9,000. The judge tried the case without a jury, and rendered judgment in favor of the defendant. The judgment, under agreement of counsel, "is to be construed not as adjudicating the absolute ownership of the bonds, but as adjudicating that Phillips holds the same as pledgee thereof under a valid lien for money advanced the company through Parker, as claimed by the defendant." The plaintiff excepted, alleging that the judgment was contrary to law and without evidence to support it.

On the trial the plaintiff introduced the depositions of the defendant, who testified, that he was in possession of bonds issued by the Parker Asphalt Roofing Company, of the par value of $9,000, and got them in the spring of 1910 from Parker as president of the Oklahoma Asphalt, Paint & Roofing Company. "The circumstances connected with the trade when Parker, as president, turned

the bonds over to me was that I advanced the company money. I did not take a note for it. I advanced the company at that time $2,450. The company at that time owed me between $3,000 and $4,000 I had advanced it through Parker as president. My papers were all lost. . . The notes were issued some time during the year. To my recollection, the bonds were received before the notes were issued, and when I got the bonds I advanced more money. I did not receive a note for that money. I could not tell you what names were signed to the notes I held. I can swear that the company I advanced the money to was the Oklahoma Asphalt, Paint & Roofing Company. I advanced about, all told, $6,000 or $6,500. Notes were not taken for the whole amount. About $3,000 was covered by notes. The bonds were not received as collateral for the notes. They were not attached to the notes. The name of the company was signed to the notes by Parker as president, and by no one else. My claim to the bonds is about $7,000. I was to hold the bonds as mine, but they were to secure the debt. They belong to Parker's company, and are subject to this claim. I will gladly turn them over to you. I have no acknowledgment of the receipts of that company except the notes that were lost, and except letters from Parker. . .. I have no books of account which show any record of advancing this money to the company. . . It was practically all paid by check. Some of the checks were payable to Parker and some to the company, my recollection is about one half to each. At the time these bonds were delivered to me I knew they belonged to Parker or his company. I understood they were owned by the Oklahoma Asphalt, Paint & Roofing Company, or by Parker as president of one of his companies. . . I collected about $200 of the interest [on the bonds] some time last summer. This was the interest of about $4,000 at 5 per cent. I drew on the First National Bank of Ardmore through the Bank of Thomasville, and they paid it. . . I do not remember any written contract with reference to these bonds by which I was to hold the bonds as security. I think some of the papers that were lost were the title or a written contract about the bonds. . . They were to refund my money at 8 per cent. interest, and I would turn the bonds over to the company. If there was any such contract it was signed by Parker as president, and no one else. . . These bonds belong to me until the money is paid. I was to hold and keep these bonds

until the money was paid. When I say that I was to keep them until the money was paid, I am referring to the agreement with Parker as president, to which I have testified."

The plaintiff introduced in evidence a bank-check drawn by the defendant, payable to the order of Oklahoma Asphalt, Paint & Roofing Company, for $2,250, dated July 11, 1910, indorsed in the name of that company "bý J. E. Parker, Pres't," and marked paid, July 14, 1910. J. T. Paschal testified, that he was secretary and treasurer of the Oklahoma Asphalt, Paint & Roofing Company, and was a director and stockholder of the company since its organization in April, 1910, and that Mr. Parker was president of the company from its organization, and was "in charge of all the operations of the company. The officers and stockholders of the company knew he was in charge of all operations all that time. These bonds we are suing for were made payable to bearer, and they were in possession of the Chickamauga Asphalt Company before Mr. Parker got them. He got them from that company to use as security in procuring a loan from Mr. P. D. Phillips. I do not know whether Mr. Parker got that money from Mr. Phillips or not. All I know about it is what Mr. Parker said and what the books show. If he did get it, I don't know what the agreement was, of my own knowledge. Mr. Parker reported to the Oklahoma Asphalt, Paint and Roofing Company that these bonds were to be used by him as its president, for the purpose of getting money from Mr. P. D. Phillips." The witness testified that the indorsement on the defendant's check for $2,500, referred to above, was in the handwriting of J. E. Parker, president of the plaintiff company, and further testified: "The books show the Oklahoma Asphalt, Paint & Roofing Company also got $200, I think it was, from Mr. Phillips. I do not know whether Mr. Phillips parted with his money as he says he did, or not . . I do know the money from Mr. Phillips never went to the company. The bonds were the property of the Oklahoma Asphalt & Roofing Company after they passed out of the Chickamauga Asphalt Company. I understand these bonds were delivered to Mr. Parker for the purpose of getting a loan from Mr. Phillips, and Mr. Parker told us that was the purpose for which they were taken from the Chickamauga Asphalt Company. Mr. Parker said all he got from Mr. Phillips was a personal loan. It would not have been all right

for Mr. Parker to have gotten the money from Mr. Phillips; he might have spent it before the company ever got it. It would have been all right had the company got the money after Mr. Parker got it from Mr. Phillips. . . Neither I nor my company are paying interest on these bonds, and have not paid any lately. I do not know anything about who has paid the interest. I have refused to pay the interest. I do not know that Mr. Parker paid the interest." "I was present at the directors' meeting of the company when Mr. Parker reported to the directors that he had sold these bonds to Mr. Phillips. In that report Mr. Parker presented his resignation and told us that Mr. Phillips held the bonds to secure a loan. He said he had borrowed some money from Mr. Phillips and had let him have these bonds to secure that loan. He did not say he had ever delivered to the company the money he had borrowed. He never delivered it and the company has never received it. We demanded of Mr. Parker that he get the bonds back from Mr. Phillips. We have never ratified Mr. Parker's acts in disposing of these bonds. Mr. Parker's report was made in March, 1911.

. . I first heard in March, 1911, that it was the purpose, in acquiring these bonds, for them to be transferred to Mr. Phillips. That was a part of Mr. Parker's report to the directors. That was the first I knew about his having transferred the bonds to Mr. Phillips. . . They were in Mr. Phillips's possession at that time. There was no directors' meeting ratifying the buying of these bonds that I can find. Mr. Parker told us that he had let Mr. Phillips have the bonds, for money he owed personally to Mr. Phillips. Mr. Parker was not authorized to bring these bonds here and sell them to Mr. Phillips, provided he got the money and turned it in to the company. . . There is no record of whether the company got the money or not. . . There is no record in the books there. I do not know of my own knowledge whether the company got Mr. Phillips's money for the bonds or not. . . I know no more than the books show. . . I can not say of my own knowledge that the company never received the benefit of Mr. Phillips's money."

. . By-laws of the Oklahoma Asphalt, Paint & Roofing Company, introduced in evidence, provide that "the directors shall have control of the property and business of the corporation," and shall elect a president and a secretary and treasurer, and that "the presi-

dent shall preside at all meetings of the stockholders and directors, shall sign all certificates of stock, deeds, and contracts executed by the company, and shall have such other duties as may be determined by the board of directors." The by-laws contain no other provision conferring power on the president. The minutes of the company were introduced in evidence. They show no action authorizing the borrowing of money from Phillips or the pledging of the bonds with him, and no action ratifying such acts. The minutes of a stockholders meeting held on March 25, 1911, contain a resolution requesting information as to the company's business and financial condition, and state that one of the objects of the meeting is "to advise some plans of procedure as to how we would get the bonds back from Phillips."

*H. J. McIntyre, Smith & Hastings,* for plaintiff, cited: Interstate Securities Co. v. Third Nat. Bank, 231 Penn. 422 (80 Atl. 888); *Brown* v. *Bass,* 132 *Ga.* 41; *Minnesota Lumber Co.* v. *Hobbs,* 122 *Ga.* 20, 24; *Merchants Bank* v. *Rawls,* 7 *Ga.* 191 (50 Am. D. 394); *Exchange Bank* v. *Thrower,* 118 *Ga.* 433; *Garmany* v. *Lawton,* 124 *Ga.* 877; *DeVaughn* v. *McLeroy,* 82 *Ga.* 688 (4*d*), 700; 31 Cyc. 1641; Moore *v.* Ensley, 112 Ala. 228 (20 Sou. 744); Iowa State Savings Bank *v.* Black, 91 Iowa, 490 (59 N. W. 283).

*Roscoe Luke, Louis Moore, Little & Powell,* for defendant, cited: National State Bank *v.* Sanford Fork & Tool Co., 157 Ind. 10 (60 N. E. 699), and distinguished cases cited above, and *Potts-Thompson-Liquor Co.* v. *Potts,* 135 *Ga.* 452, and *Capital City Brick Co.* v. *Jackson,* 2 *Ga. App.* 771.