EMILE SACRE

*vs.*

VICTOR L. SACRE
PEOPLE'S SAVINGS BANK

Androscoggin.   Opinion, November 6, 1947.

Frank W. Linnell,
Edward R. Parent, for plaintiff.

Crockett & Crockett, for defendants.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

TOMPKINS, J.   Bill in Equity seeking an assignment and release from Victor L. Sacre, one of the defendants, to his father, Emile Sacre, the plaintiff, of the defendant's rights under a bond for a deed from the People's Savings Bank, the other defendant, for a conveyance of certain real estate in Lewiston, in the county of Androscoggin, State of Maine. The bill is before this court on exceptions to matters of law.

The plaintiff in his bill alleges that on the 15th day of July, 1922, he purchased two certain parcels of real estate in the city of Lewiston, and that he executed at different times three several mortgages to the People's Savings Bank of Lewiston, Maine, amounting in all to the sum of $50,000; that on the 9th day of August, 1940, while the three mortgages were still outstanding, he entered into a written agreement with the defendant, the People's Savings Bank, relative to the settlement of said mortgages for less than the amount due thereon; that on the 5th day of November, 1940, the defendant, People's Savings Bank, further modified the written agreement; that from time to time between the 9th

day of August, 1940, and the 5th day of March, 1941, said defendant, People's Savings Bank, advised the plaintiff through his attorney, Edward R. Parent, that it did not desire to continue the extension of credit to the plaintiff in accordance with the terms of the mortgages, and from time to time advised him through his attorney that it would continue the extension of credit on said mortgages, to the plaintiff, if the title to the property were taken in the name of another, and instructed the plaintiff, through his attorney, that the Bank did not wish to do business any further with the plaintiff, but if the title to the property were put in the name of another it would continue to finance the property.

Acting upon the advice and instruction of the Bank the plaintiff arranged between August 9, 1940, and March 5, 1941, through his attorney, that his son, the defendant Victor L. Sacre, would hold the title for the plaintiff, so that the Savings Bank would continue to finance said mortgages. The Bank advised the plaintiff, through his attorney, on or about the third of March 1941, that in order to carry such arrangement into effect it would be necessary to foreclose one of the three mortgages and to execute a bond for a deed of the premises to the defendant, Victor L. Sacre; that acting in accordance with said procedure on the third day of March 1941 the defendant, People's Savings Bank, entered peaceably and openly for the purpose of foreclosing the first mortgage given by the plaintiff. On the 5th day of March, 1941 the Bank executed and delivered to the defendant, Victor L. Sacre, a bond for a deed of this property, and under the provisions of the bond Victor L. Sacre obligated himself to pay the Bank the sum of $2,000 upon the execution of the bond; that the sum of $2,000 was paid to the Bank by the plaintiff and not by Victor. Under the provisions of the bond for a deed Victor agreed to pay the defendant, People's Savings Bank, the sum of $100 on the 5th day of each month, with interest at the rate of 5% per annum on the unpaid balance of $38,000, payable monthly until said sum of $38,000 should be paid; that since the date

of said bond for a deed the defendant, Victor L. Sacre, had not contributed any of his funds to the payment of the monthly installments of principal and interest, but it had been paid out of funds belonging to the plaintiff by delivering the money over to the defendant Victor, or directly to said Bank. Under the bond for a deed the said Victor agreed to pay all taxes assessed for the year 1941 and subsequent years, pay all water rates charged against said premises and then remaining unpaid, and all water rates thereafter charged against said premises, and to keep the premises insured in a sum not less than $25,000; that since the date of March 5, 1941, the defendant, Victor, has not paid any of the aforementioned charges, but the plaintiff has paid said charges from his own funds, either by money delivered to the defendant Victor, or payment made directly to the Bank; that since the date of the bond for a deed Victor has made no payments out of money belonging to him on account of repairs on said premises, and all the repairs have been paid for out of money belonging to the plaintiff. From March 5, 1941, until May 28, 1944, the plaintiff advanced to said defendant, Victor L. Sacre, the sum of $9,267.83 with which to meet the payments provided for in said bond, and from March 5, 1941, to the date of this bill the plaintiff has paid to said defendant, People's Savings Bank, the sum of $8,337.99 on account of said bond for a deed, which sum includes the $2,000 paid by the plaintiff at the date of the execution of said bond for a deed, and that from March 5, 1941, to the date of this bill the plaintiff has paid out of his own funds taxes to the city of Lewiston in the amount of $6,294.54, and paid to the said city since March 5, 1941, for water rates the sum of $787.99, and from March 5, 1941, to the date of this bill the plaintiff has paid out of his own funds for insurance on the buildings the sum of $1,431.41, and has also paid all the expense of repairs, improvements, upkeep and maintenance of the buildings on the premises; that at no time since the plaintiff acquired title to the premises to the date of the bill has the defendant, Victor L. Sacre, ever made any payments out of any funds belonging to him-

84

self for any charges whatever against said premises, but that all payments for maintenance, upkeep, taxes, insurance, payments on account of purchase price, mortgage indebtedness and interest, and every other payment on account of said premises has been made by the plaintiff out of funds belonging to him; that from March 3, 1941, the plaintiff has been constantly in undisputed possession and control of said premises, and has collected all rents and profits therefrom, and at no time has either defendant been in possession or exercised any dominion or control over the premises; that the defendant, People's Savings Bank, since March 3, 1941, to the date of the bill has treated the plaintiff as the owner of said premises subject to the obligation to the defendant, People's Savings Bank. After March 3, 1941 until October 1945, the said defendant Victor L. Sacre has treated the plaintiff as the owner of said premises, subject to the obligation to said Bank.

On October 26, 1945, the plaintiff, through his attorney, requested the defendant Victor to execute a quitclaim deed of said premises, but the said Victor refused to execute a quitclaim deed of said premises, and since October 26, 1945, Victor claims to be the owner of said premises free of any right, title or claim on the part of the plaintiff, and the plaintiff alleges that he has no plain, adequate and complete remedy at law. The plaintiff further alleges that at the commencement of the foreclosure proceedings by the Bank, and the giving of the bond for a deed by the Bank to said Victor L. Sacre, it was understood and agreed between the plaintiff and the defendants that Victor was to act as the agent and intermediary for the plaintiff, who is the father of Victor, relative to the premises described in the plaintiff's bill, and that prior to the date of the execution of the bond for a deed it has been understood and agreed among the parties hereto that the arrangement was one of convenience only, and was for the use and benefit of the plaintiff, and it has been understood and agreed among all the parties that the rights vested in said defendant, Victor, by the bond for

a deed were subject to the control and direction of the plaintiff, and that said defendant Victor should convey and assign his rights under said bond for a deed to the plaintiff upon demand. The plaintiff now stands ready to reduce the indebtedness due to the defendant Bank to $20,000, and has requested that a deed be executed to him upon giving a mortgage to the defendant People's Savings Bank for $20,000, and the said defendant, Victor L. Sacre, refuses to assign to the plaintiff his rights under said bond for a deed described in the plaintiff's bill, and to permit the Bank to execute a deed to the plaintiff.

The plaintiff's prayer for relief asked:

1. That the foreclosure of the mortgage described in the bill be declared null and void.

2. That it be ordered, adjudged and decreed that said defendant, Victor L. Sacre, holds said obligee interest under the bond for a deed given him by the defendant, People's Savings Bank, dated March 5, 1941, in trust for the use and benefit of the plaintiff.

Three, four and five ask for injunctive relief.

6. That it be ordered, adjudged and decreed that the bond for a deed given by the People's Savings Bank to the defendant, Victor L. Sacre, described in the plaintiff's bill, be declared null and void.

7. That the plaintiff have such other and further relief as the equities of the case may require.

The defendant filed a demurrer in his answer to the bill alleging that the plaintiff had not in and by his bill made or stated such a case as entitles him in a Court of Equity to any discovery or relief against these defendants, or either of them, as to matters contained in said bill, or any of such matters.

The justice presiding sustained the demurrer solely upon the ground that the specific prayer number two was not

warranted by the allegations of the bill. Thereupon the plaintiff filed a motion to amend his bill, which motion was allowed, and the defendant moved to amend his answer with demurrer inserted therein, which motion was allowed. The plaintiff's amendment alleged that the fair market value of the property was approximately $75,000; that the sum of $30,000 was due the People's Savings Bank, the other defendant; that the equity in the property was approximately $45,000; that the plaintiff never intended to make a gift to the defendant, Victor L. Sacre, of his equity described in the bill; that until about October 26, 1945 the plaintiff reposed confidence and trust in the defendant, Victor L. Sacre, his son, that said defendant would release his rights under said bond for a deed and assign it to the plaintiff upon his request; that relying upon the agreement made with the defendant, Victor L. Sacre, set forth in the bill, and the trust reposed by the plaintiff in his son, the said Victor L. Sacre, the plaintiff took no steps to protect his equity in the premises during the statutory year allowed for redemption after March 3, 1941; that the defendant, Victor L. Sacre, by his repudiation of his agrement with the plaintiff and by the violation of the trust which his father, the plaintiff, reposed in him, now seeks to defraud his said father, who is now eighty-one years of age, of the bulk of his life savings and to gain for himself property having a fair market value of $45,000, to the accumulation of which he has made no contribution whatsoever.

The first, second and sixth paragraphs of the original prayer for relief were struck out and the following substituted in place thereof:

1. That the defendant, Victor L. Sacre, be ordered to assign to the plaintiff all his rights under the bond for a deed given him by the People's Savings Bank described in Par. 12 of the plaintiff's bill.

The presiding justice overruled the demurrer to the amended bill. The defendant, Victor L. Sacre, excepted to the overruling of the demurrer.

The plaintiff seeks the assignment of the bond for a deed on the ground that it was mutually agreed between the father and son that the son was to assume no actual responsibility and receive no benefits under the bond, that in the transaction he was acting solely as the agent and intermediary for his father; that a confidential and fiduciary relation was created and existed between them, and the refusal of the son to comply with the request to convey his interest constituted a constructive fraud. The learned justice presiding found the following facts in the situation: "That Victor had no interest in the property either apparent or real until the bond for a deed was executed and delivered to him on March 5, 1941; that the arrangement was made between Emile and Victor as alleged in the bill; that Victor L. Sacre did not conceive the purpose to assert otherwise or to claim that the documents made on March 5, 1941, reflected the actual relations of the parties, until he realized that the payments made by his father had substantially reduced the indebtedness and, with increased value of the real estate and greater income, he might become the owner of a valuable property without taking any chance of being disinherited by his father or, if not, to have to share with his stepmother; that Victor did not know how the mechanics of the transaction would be carried out by the attorney for the Bank. He did not know that he was to receive a bond for a deed. As to his conduct afterwards concerning the retention of control and management of the property and of its net income by Emile, his present claim is that he intended to allow his father and stepmother to live on the premises without any charge for rent, but it appears that the whole arrangement was actually made with him by Mr. Parent as attorney for Emile. In view of the entire situation and the evidence thereof as disclosed by the record, this claim is without probative force."

The learned justice then proceeds to consider the legal and equitable principles which have application to the foregoing finding of fact. The court states "The contentions

of counsel for Victor are that the bill in equity sets out a trust which, as it concerns real estate, must be either a resulting or constructive trust; that to establish either of such trusts it must be shown that the legal title to the property was in Victor; that instead he had only a bond for a deed which created no legal title; that no such trust was declared in writing as required by R. S. 1944, Chap. 154, Sec. 17; that the plaintiff, Emile, actually relies upon the breach of an oral promise or agreement for which a remedy in equity does not lie; that the contention of the plaintiff, Emile as to a constructive trust by reason of a fiduciary or confidential relationship between the parties fails of proof; that instead of the control and management of the property by Emile and the collection of rents the plaintiff was acting as agent for his son, Victor; and finally that whichever view of the evidence is accepted by the court as the true version Emile, the plaintiff, is not entitled to the relief prayed for.

"The case of *Cross* v. *Bean*, 83 Me. 61, is cited by the plaintiff to the point that a bond for a deed does not convey any legal interest in the land, but is wholly executory. The legal title remains in the vendor who may convey it to any person other than the vendee. This is the language of the court, but it is stating that proposition as 'viewed from a legal standpoint,' then points out very carefully that 'equity regarding what ought to be done as done, construes the agreement, so far as the interest in the land is concerned as executed; and treats the vendee as the equitable owner of the land, and the vendor as owning the consideration. The consideration draws to it the equitable right of property in the land, and he who pays it becomes the true beneficial owner and a trust is thereby created in his favor.' The estate in the property created by a bond for a deed is thus shown to be much more than the holder of an ordinary contract for breach of which money damages would lie.

"Plaintiff's counsel cites the statutory requirement, R. S. 1944, Chap. 154, Sec. 17, which reads: 'There can be no trust concerning lands, except arising or resulting by im-

plication of law, unless created or declared by some writing signed by the party or his attorney.' His citation from Pomeroy on Equity Jurisprudence (4th Ed.), however, makes clear that 'All trusts which arise by operation of law are, as the name indicates, excepted from the requirement of the statute of frauds. This entire grand division consists of two general classes; resulting trusts and constructive trusts.' Consequently the defendant's contention that the plaintiff must rely upon a constructive or resulting trust of itself negatives the necessity for a writing. Again in Pomeroy's Work, Sec. 1044 (4th Ed), cited by the plaintiff, the author in defining the application of constructive trusts says that 'It applies to all cases of actual or constructive fraud and breaches of good faith and enables courts of equity to wield a remedial power of tremendous efficiency in protecting the rights of property.' Further, the author says, 'The principle is one of universal application; it extends alike to real and personal property, to things in action and funds of money.' Again in Sec. 1052 (4th Ed.), the author makes the sweeping statement that 'The doctrine (on constructive trusts) may be stated in its most general form, that whenever a trustee or person clothed with any fiduciary character takes advantage of the relation, and by means of it acquires the title or use of the trust property, or makes a profit or advantage to himself out of the trust and confidence, then a constructive trust is impressed upon such property, profits, or proceeds in his hands, in favor of the original beneficiary. . . . . This form of constructive trust embraces many particular instances, and the principle is extended to all abuses of confidence, whereby the one in whom the confidence is reposed obtain an advantage.' Again, in Sec. 1053 (4th Ed.), appears the statement, 'The principle is applied whenever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer,' citing many cases.

"The case of *Wood* v. *White*, 123 Me. 139, is cited and claimed to be conclusive against the contention of the plain-

tiff as to a constructive trust on the ground of fraud. It is there held that 'A constructive trust cannot be predicated upon a broken promise to hold land in trust, though such promise is fully proved and based upon an adequate consideration. Such a promise creates an express trust which to be valid must be in writing.' The opinion of the court goes on to say, however, 'But fraud or abuse of a confidential relation gives rise to a constructive trust, none the less because accomplished by or accompanied by a parol promise which is as such unenforceable.' . . . . . In its ordinary acceptation a confidential relation is that relation that exists between attorney and client, guardian and ward, and the like. But the true definition is much broader. 'A person is said to stand in a fiduciary relation to another when he has rights and duties that he is bound to exercise for the benefit of the other person. Whenever one person is placed in such relation to another that he becomes interested for him or interested with him in any subject of property or business he is prohibited from acquiring rights in that subject antagonistic to the person with whose rights he has become associated.'

"Again, our court has clearly enunciated its own position in accord with Pomeroy and the great trend of judicial authority in *Gerrish Ex'r* v. *Chambers,* 135 Me. 70 at 74:

'Fraud in equity includes all wilful or intentional acts, omissions or concealments by which an undue or unconscientious advantage is taken over another. Undue influence is a species of constructive fraud. Whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his or her position will not be permitted to retain the advantage.

The term "fiduciary or confidential relation" embraces both technical fiduciary relations and those

informal relations which exist whenever one person relies on and trusts in another. And the rule is that whenever a fiduciary or confidential relation exists between the parties to a deed, gift, contract or the like, the law implies a condition of superiority held by one of the parties over the other, so that in every transaction between them by which the superior party obtains a possible benefit equity presumes the existence of undue influence and the invalidity of the transaction, and casts upon that party the burden of proof of showing affirmatively by clear evidence that he or she acted with entire fairness and the other party acted independently, with full knowledge and of his own volition free from undue influence.'

This statement adapts and confirms the principle as enunciated in *Eldridge* v. *May,* 129 Me. 112. There the business relations between a brother and sister were involved. Here it is those of father and son. The son was requested to act in behalf of his father. He understood the situation. He knew the efforts and energy the father had exerted to obtain the property, to greatly improve it, the exigencies he had faced, the attitude of the Bank toward the father, the opportunity to save the property by the offer of the Bank to greatly reduce the indebtedness, and that the father earnestly desired to save it for himself. To whom would the father turn under such circumstances than to his own son, for even though their relationships had not recently been cordial, still he reposed trust and confidence in him, and the son knew it, and agreed to act for the father. For more than four years his conduct substantiated the confidential and fiduciary relation. It might be argued that the wrongful intent and purpose of the son to secure the benefit of the property for himself must be shown to be coincident with the inception of the arrangement. It is, however, the occurrence of the breach itself which is fraudulent. *Goodwin* v. *McKinn,* 74 Am. St. Rep. 703. This case is cited in Pomeroy's Equity Jurisprudence in the author's note to Sec. 1056 (4th Ed.), in which he says:

'The question that may well be asked is, does it make any difference whether B intended at the

time he obtained the conveyance, to violate the confidence reposed in him, or is it sufficient if he actually procures the conveyance and then at some later time, concludes to violate it? It seems that his conduct in either case would be equally inequitable, and the fraud after he had actually procured the conveyance, would consist in his holding the property contrary to the terms of the agreement'

"Here the defendant is now attempting to reap the benefit of a contract he never made, by abusing the confidence reposed in him. The efficient principles of equity may be invoked to prevent it. As said in the recent case of *Hutchins* v. *Hutchins*, 141 Me. 185, 'As to the allegation of breach of the relationship of trust and confidence, equity will protect against the wrong accomplished through the abuse of such relationship.' The defendant, Victor L. Sacre, by his refusal to release and transfer his apparent rights under the bond for a deed, has violated the trust and confidence reposed in him while acting in a confidential and fiduciary capacity and such refusal constitutes a constructive fraud. Inasmuch as the transaction was brought about, in part at least by the unwillingness of the People's Savings Bank to continue to deal with the plaintiff, individually, and further the bond for a deed provided that when the indebtedness was reduced to $20,000 the Bank would execute a deed to the obligee in the bond and take a mortgage for the sum of $20,000, still under the circumstances the court would not undertake to compel an arrangement which would require the Bank to accept such a mortgage from the plaintiff. However, there would appear to be no practical difficulty which would prevent the plaintiff from procuring a mortgage loan, if necessary, elsewhere, and under these circumstances, the Bank will not be directed to make a conveyance to Emile Sacre, the plaintiff, until the full amount due it under the bond for a deed has been paid."

The court made the following decree:

(1) That the said defendant, Victor L. Sacre, assign to the complainant, Emile Sacre, all his

right, title and interest in and to the bond for a deed given to him by the People's Savings Bank on the fifth day of March 1941, and to the real estate described therein, a copy of which bond is fully set forth in Exhibit C of the complainant's bill.

(2) That the said defendant, Victor L. Sacre, be, and hereby is, permanently enjoined from conveying or encumbering the premises described in the complainant's bill except as set forth in Paragraph one hereof.

(3) That the defendant, Victor L. Sacre, be, and hereby is, permanently enjoined from exercising any dominion or control over the premises described in the complainant's bill.

(4) That when the assignment referred to in Paragraph 1 hereof has been completed, the said defendant People's Savings Bank execute and deliver to the complainant, Emile Sacre, a good and sufficient deed of the real estate described in the complainant's bill, clear of incumbrances, upon the tender to it by the said Emile Sacre of the balance of the principal, together with accrued interest at five per cent as provided in said bond for a deed.

(5) That the complainant, Emile Sacre, shall be entitled to costs against the said Victor L. Sacre.

The defendant Victor insists that the overruling of the demurrer was error and that the plaintiff was without remedy because the trust not being declared in writing is subject to the statute of frauds. The statute, however, does not apply where the "trust or confidence shall or may arise by implication or construction of law." No trust was created or sought to be created in this case by any agreement of the parties; it arose by implication or construction of law out of the confidential relation of the parties. Victor, the defendant, was not authorized to buy and hold in trust. His duty was to aid Emile, the plaintiff, in protecting his equity in the property and to secure for Emile a very substantial discount on the mortgage. Having undertaken to do this

he cannot by any fraudulent act during the period of his engagement thwart his father by refusing to perform his part of the undertaking, thereby making it impossible for the father to accomplish the purpose for which the arrangement was entered into between them. A party may voluntarily assume a confidential relation toward another, and if he does so he cannot thereafter do any act for his own gain at the expense of such relationship. *Quinn* v. *Phipps,* 113 So. 419, and cases there cited.

The plaintiff claims a constructive trust arose by implication of law. There rested upon him the burden of proving the trust and proving it by full, clear and convincing evidence. The learned justice found this burden sustained. He found the facts to be as claimed by the plaintiff. His conclusion of law was manifestly correct. The statute recognizes the two general classes of trusts, express and implied. No express trust is claimed. The exceptions in the statute which require no writing are implied trusts. There are two fundamentally different kinds, resulting and constructive. The former carries into effect the presumed intent of the parties. The latter defeats the intent of one of the parties. *Wood* v. *White,* 123 Me. 139.

The plaintiff does not claim a resulting trust. He bases his right solely on the ground of a constructive trust arising out of the confidential relationship. Constructive trusts are based on fraud, abuse of confidential relations, oppression or mistake. A constructive trust cannot be predicated upon a broken promise to hold land in trust though such trust be fully proved and based upon adequate consideration. Such a promise creates an express trust which to be valid must be in writing. *Wood* v. *White, supra,* and cases there cited.

But fraud or abuse of a confidential relation gives rise to a constructive trust, none the less because accomplished by a parol promise which is as such unenforceable. *Wood* v.

*White, supra,* and cases there cited. The circumstances which may create a fiduciary relationship are so varied and so difficult to foresee that courts have thought it unwise to attempt to make comprehensive definitions. *Gilpatrick* v. *Glidden,* 81 Me. at 150; *Cann* v. *Barry,* 293 Mass. 313. In the latter case the court cites with approval the statement of Lord Chelmsford in *Tate* v. *William,* L. R. 2, Chaps. 55, 56, that "Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused or influence exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, though the transaction could not have been impeached if no such confidential relation had existed." See also *Gerrish Ex'r* v. *Chambers,* 135 Me. 70. The Massachusetts statute relative to trusts created in real estate is the same as our own, and in the case of *Barry* v. *Cann, supra,* the court said that where the defendant who acquired a lease of land with the intent to keep it for himself, but who had fraudulently allowed the plaintiff, toward whom he held a confidential duty, to believe that he would acquire the lease for the latter and had thus induced him not to take steps to acquire it for himself, held the lease under a constructive trust for the plaintiff.

A constructive trust is one raised by equity in respect to property which has been acquired by fraud, or though acquired originally without fraud it is against equity that it should be retained by him who holds it. A constructive trust arises purely by construction of equity, independent of any real or presumed intention of the parties to create the trust, and is generally thrust on the trustee for the purpose of working out a remedy. The trust is not what is known as a technical trust, and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand on the

thing and wrest it from the possession of the wrongdoer. The trust is said to arise from actual fraud, constructive fraud, and from some equitable principle independent of any fraud. 26 R. C. L. (Trusts) 1232. *Quinn* v. *Phipps,* 113 So. 419.

In *Wild* v. *Rabe,* 96 N. Y. at 425, the court there said: "There are two principles upon which a court in equity acts in exercising its remedial jurisdiction . . . . . One is that it will not permit the statute of frauds to be used as an instrument of fraud, and the other, that when a person through the influence of a confidential relation acquires title to property or obtains an advantage which he could not conscientiously retain the court, to prevent the abuse of confidence, will grant relief . . . . . The principle that when one used the confidential relation to acquire an advantage which he ought not in equity and good conscience to retain, the court will convert him into a trustee and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds."

The defendant argues that because he held the bond for a deed the money paid from income arising from the property belonged to him, and that his father was acting as his agent, and that he was not acting as his father's agent. Equity looks at the substance and not at the form of a doubtful transaction. The learned justice hearing the case found that "The defendant is now attempting to reap the benefit of a contract which he never made by abusing the confidence reposed in him. The efficient principles of equity may be invoked to prevent it . . . . . The defendant, Victor L. Sacre, by his refusal to transfer and release his apparent rights under the bond for a deed has violated the trust and confidence reposed in him while acting in a confidential and fiduciary capacity, and such refusal constitutes a constructive fraud."

The defendant claims that the alleged trustee in a resulting or constructive trust must be the holder of the legal title,

and there is a wide difference between an equitable and a legal title, and states "There seems to be no authority for declaring a resulting or constructive trust where the alleged trustee is merely the holder of a bond for a deed." The justice presiding pointed out that Pomeroy's Work on Equity, Sec. 1044 (4th Ed.), defines the application of constructive trusts, and that "It applies to all cases of actual or constructive fraud and breaches of good faith and enables courts of equity to wield a remedial power of tremendous influence in protecting the rights of property." Further, the author says "The principle is one of universal application; it extends alike to real and personal property, to things in action and funds of money." In *Cann* v. *Barry, supra,* the court declared a constructive trust in a lease of real estate, not out of a broken promise but by implication of law, and ordered the assignment of the lease. See also *Horn Pond Ice Co.* v. *Pearson et al.,* 267 Mass. 256; *Essex Trust Co.* v. *Enright et al.,* 214 Mass. 507; *Girard Co.* v. *Lamoureux,* 227 Mass. 277.

In *Cushing* v. *Danforth,* 76 Me. 114, which was an action of forcible entry and detainer, the following facts appear. One R. J. Cushing and the defendant, Gardiner F. Danforth, bought a stock of goods and the good will of a store and divided the stock and store, each taking separate portions. The court found the facts and circumstances were such as to lead it to believe that the defendant expected a joint lease of the premises from the owner and he understood, and had a right to understand, not only from the relationship between R. J. Cushing and himself, but from the acts and representations of R. J. Cushing, that the said Cushing would and did obtain such a lease, while in fact R. J. Cushing obtained the lease in the name of his father, James E. Cushing, who brought forcible entry and detainer against the defendant, Gardiner F. Danforth, for the part occupied by him. The court there stated that R. J. Cushing was acting in a fiduciary character when he obtained the lease, and that he must be deemed to hold it in trust for the defendant

as well as himself; that James E. Cushing, the father of R. J. Cushing, was a passive trustee for the son and the same trust attached to his lease; and that the defendant had an equitable title to the premises sufficient to maintain his defense against the father, James E. Cushing. If a constructive trust can be declared where the alleged trustee is holder of a lease of real estate there seems to be no good reason why the same equitable principle should not apply to a bond for a deed. The exception cannot be sustained.

When the evidence was concluded, and before the court had filed findings and decision, the defendant's counsel presented to the court in writing a request for separate findings of law and fact. Counsel for defendant requested the court to make the following rulings of law, eighteen in number. The requested rulings 9, 13, 14, 15, 17 and 18, as they had reference to the evidence in the case which was not made a part of the bill of exceptions were not discussed. For that reason only rulings on 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12 and 16 requested were argued. The following rulings of law were pressed in argument:

1. The plaintiff in his bill, by a fair and reasonable construction of its language, attempts to impress a trust in his favor, the subject matter of that trust being the Bond for a Deed mentioned in the bill and made a part thereof as Exhibit C, and the real estate described therein, and the said Victor L. Sacre being the trustee.

2. Said Bond for a Deed concerns lands within the meaning of the R. S., Chap. 154, Sec. 17, which provides that "there can be no trust concerning lands except arising or resulting by implication of law, unless created or declared by some writing signed by the party or his attorney."

3. The plaintiff's bill as amended, by a fair and reasonable interpretation of his language, alleges in substance that the said Victor L. Sacre holds his interest in and rights under said Bond for a Deed as Trustee for the benefit of the plaintiff.

4. There being no allegation, proof or claim of trust created or declared by a writing signed by said Victor L. Sacre or his attorney, there can be no trust concerning the real estate described in Paragraph 1 of the plaintiff's bill and described also in said Bond for a Deed except a trust arising or resulting by implication of law.

5. Trusts concerning land which arise or result by implication of law consist of two general classes, viz., resulting trusts and constructive trusts, and the evidence in the present case fails to show either a resulting trust or a constructive trust concerning said real estate.

6. As there has been no conveyance to the said Victor L. Sacre of the legal title to said real estate, and no such conveyance alleged in the bill or claimed by the plaintiff, no resulting trust concerning said real estate has arisen in favor of the plaintiff.

7. As there has been no conveyance to the said Victor L. Sacre of the legal title to said real estate, and no such conveyance alleged in the bill or claimed by the plaintiff, no constructive trust concerning said real estate has arisen in favor of the plaintiff.

8. The provision in said Bond for a Deed that "the said Victor L. Sacre is to have possession of said premises until he shall have failed to perform the conditions of this bond," gave him the right to receive and appropriate to himself the rents and income of said real estate until he should fail to perform the conditions of the bond, it neither having been alleged or shown by the evidence or claimed by the plaintiff that said Victor L. Sacre did fail to perform said conditions, said rents and income became his property under the terms of the Bond.

10. As the money of said Victor L. Sacre, and not the money of the plaintiff, went for said payments, taxes, insurance, water charges and repairs, no constructive trust concerning said real estate has arisen in favor of the plaintiff.

12. It not having been alleged in the bill, shown by the evidence or claimed by the plaintiff that there was any written promise on the part of said Victor L. Sacre to give a Quit-Claim deed of said real estate to the plaintiff or to assign to the said plaintiff his interest in and rights under said Bond for a Deed, the breaking of an oral promise to so deed or so assign, if there was the breaking of an oral promise was not sufficient to predicate a resulting or constructive trust in said real estate in favor of the plaintiff.

16. The allegations in the plaintiff's bill, even taken as true, do not entitle him to the relief prayed for in said bill, viz., "that the said defendant, Victor L. Sacre, be ordered to assign to the complainant all his rights under the bond for a deed given to him by the People's Savings Bank described in Paragraph 12 of the complainant's bill."

To the requested rulings of law the court made the following ruling: "Except as treated and considered in the findings and decision of the court the requested rulings for the defendant, Victor L. Sacre, are denied. Exceptions will be allowed." Defendant excepted to the denial in the case of each of the requested rulings, also to the following ruling contained in the court's findings and decision: "The defendant, Victor L. Sacre, by his refusal to transfer and release his apparent rights under the Bond for a Deed, has violated the trust and confidence reposed in him while acting in a confidential and fiduciary capacity and such refusal constitutes a constructive fraud." Also to the final decree and each paragraph thereof.

Sec. 26 of Chap. 95 of the R. S. provides that in equity proceedings "Either party aggrieved may take exceptions to any ruling of law made by a single justice . . . . . Upon request of either party the justice hearing the cause shall give separate findings of law and fact." The extent to which a judge in equity proceedings is required to go in making "Separate findings of law and fact" on request, de-

pends upon the interpretation of said Sec. 26. At common law in trial by the court without a jury the finding of issues of fact by the court on the evidence was unknown, and it may be said to be the general rule that a trial judge in a common law action need not make special findings of fact unless he is required to do so by statute. Am. Jur. (Trial) Par. 1133. Accordingly if any right without the aid of a statute or rule of court to present requests for rulings exists in any equity case heard by a judge the right is closely restricted. *Belzarian's Case,* 307 Mass. 559; *Pierce* v. *Woodbury,* 100 Me. 22; *McKenney* v. *Wood,* 108 Me. at 336.

A judge in equity, as when sitting at law without a jury, has two functions to perform, one to make rulings of law and the other to make findings of fact. These two functions are quite separate and distinct. Parties may rightly request rulings of law and fact of the judge sitting in equity for the statute so provides. His obligation on request for a ruling of law is to determine the legal issues necessarily involved in the decision of the case. The object of the finding of fact and conclusion of law in a case where the judge is the trier of fact is to ascertain the theory on which he decides the case, in order that the right of review may be preserved. *Tarjan* v. *National Security Co.,* 268 Ill. App. 232; *Johnson* v. *Murray et al.,* 289 S. W., 977; *Bianchi* v. *Denham & McKay Co.,* 302 Mass. 269. It is obvious that should a judge be required to answer each request separately he would be compelled to labor unnecessarily at times answering immaterial and irrelative matters having no material bearing on the merits of the controversy. It is not necessary to wander over the whole domain of facts and law developed by the case and involved in the requested findings. It is sufficient if the facts found and the law cited adequately cover the material points involved in the case. *Kershbaum* v. *London Guaranty & Accident Co.,* 286 Pa. 213; *Athens National Bank* v. *Ridgeway Tp.,* 393 Pa. 479; *Crew Levick Co.* v. *Philadelphia Investment Building & Loan Assn.,* 177 A. 498.

The cases cited so far were actions at law, but the analogy appears to be carried through in causes in equity. *Kilgore et al.* v. *Stevens et al.*, 14 P. (2nd) 690; *Stone* v. *Howard*, 33 Fed. Rep. (2nd) 701; *State ex rel. Utley* v. *Knights of Pythias*, 157 Ark. 266; 247 S. W. 1068; *Brener* v. *City of Philadelphia et al.*, 305 Pa. 182; 157 At. 466.

The statute does not require the court to make just such findings of law as may be requested any more than it would be required of him to give just such instructions as might be requested by a party in a jury trial. Nor does the statute provide that such findings as the court may or does make shall be in a particularly specified form, style or verbiage. It merely requires that "Upon request of either party the justice hearing the cause shall give separate findings of law and fact." It requires no more than that the material and controlling facts and rulings of law be found by the court, shall be so separated and distinguished from each other as to afford the party an opportunity to except to any particular findings of law or fact, thereby enabling him to assign and point out such finding as error. Where a court dictates into the record in such intelligible manner or form as to render them distinguishable, what the material facts are as he views them, and what are his conclusions of law in reference thereto, he has substantially complied with the statute and given the party his substantial rights under the same. *Etchen* v. *Texas Co. et al.*, 199 P. 212; *Kershbaum* v. *London Guaranty & Accident Co., supra; Kilgore et al.* v. *Stevens et al., supra; Brener* v. *City of Philadelphia et al., supra.*

In our opinion the finding which the court made constitutes a substantial compliance with the statutes. He embodied the facts involved in the case necessary to the determination of the issue so far as the record discloses. The findings of fact and law are clearly distinguishable one from the other. There is no difficulty in ascertaining from the record the real question of law to be passed upon, and no difficulty in determining the law under which the learned

justice decided the case. We think there was a substantial compliance with the statute.

From an examination of the record we conclude that the other assignments of error are without merit. The decree should be so amended that the defendant, Victor L. Sacre, be protected from any liability on the note held by the defendant People's Savings Bank and described in the bond for a deed given by the Bank to Victor L. Sacre. The finding for the plaintiff was justified.

> *Exceptions overruled.*
> *Bill sustained*
> *Decree in accordance with*
> *this opinion.*