479 P.2d 986 (1970)
The FIRST NATIONAL BANK OF DENVER, as Executor of the Estate of Harry W. Rabb, Deceased, Plaintiff in Error,
v.
HARRY W. RABB FOUNDATION, a Colorado corporation, Defendant in Error.
No. 70-338. (Supreme Court No. 23260.)
Colorado Court of Appeals, Div. II.
November 17, 1970.
Rehearing Denied December 29, 1970.
*987 Maley & Schiff, John T. Maley, Denver, for plaintiff in error.
Meer, Schwartz & Meer, Albert B. Wolf, Denver, for defendant in error.
Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
Plaintiff in error is executor of the estate of Harry W. Rabb (referred to as decedent); defendant in error was claimant in the Probate Court and will be referred to as such. The matter appealed is the Probate Court's judgment for claimant on two claims against decedent's estate.
The two claims were as follows: First, claimant alleged existence of an agreement by which decedent agreed to transfer to it, among other things, certain stock in return for its payment to him of a $10,000 annual annuity in quarterly installments for the rest of his life; and that, although it had made the required annuity payments, decedent had not transferred the stock prior to his death. Second, claimant alleged existence of certain promissory notes, payable to decedent individually, although given for money advanced from claimant's funds. Claimant sought delivery of the contested stock and delivery of the promissory notes or, alternatively, reimbursement in the amount of their principal value, plus interest.
The executor filed a general denial and affirmatively pleaded the defenses of the Colorado six-year statute of limitations (C. R.S.1963, 87-1-11) and "laches" to the claim on the stock, and pleaded the Colorado five-year statute of limitations (C.R.S. 1963, 87-1-15) to the claim on the notes.
On motion, the claims were tried under the Colorado Rules of Civil Procedure, and the evidence, substantially uncontroverted since the executor put on none, showed as follows:
On July 1, 1960, decedent, by letter, offered to transfer to claimant, among other things, 5,000 shares of stock each in Harry Rabb Investment Company and Sedalia Land Company, in return for claimant's assurance to pay the aforementioned annual annuity. Decedent, as claimant's president, and on behalf of its Board of Trustees, then accepted this offer in writing on the same date. Thereafter, on July 5, 1960, decedent, on behalf of himself, individually, and as claimant's president, executed a written document reflecting this agreement, which recited that said stock had been properly transferred contemporaneously with execution of the agreement.
On July 30, 1966, decedent died and the executor took possession of his assets. Found in a safe-deposit box were the stock certificates representing the aforementioned 10,000 shares of stock, which had neither been transferred to claimant nor endorsed by decedent. Also found therein were nine promissory notes executed after the date of the agreement, discussed above, payable to decedent, individually, and executed by the aforementioned Harry Rabb Investment Company and Sedalia Land Company. The notes totaled $29,872.50, and had been given in exchange for funds paid out by claimant Foundation.
Decedent was the only one of claimant's officers authorized to transact its financial *988 affairs, including issuance of checks on its account, from which the funds underlying the nine promissory notes had apparently been derived. Further, he was the only one with authority to enter claimant's safe-deposit box.
The other members of claimant's Board of Trustees were unaware until decedent's death that the contested stock had not been transferred; further, so far as they could tell from entries made by decedent in claimant's books (which were maintained by him and his secretary, only), the transfer had in fact been made.
On this evidence, the Probate Court found claimant's factual allegations to be true and ruled, as a matter of law, that the respective Colorado statutes of limitations cited by the executor did not begin to run until claimant had actual knowledge of the facts surrounding its claim (June 30, 1966the date of decedent's death); and that, therefore, since the claims were filed within seven months of that date, recovery was not barred on either claim. The court also ruled that "laches" did not bar recovery for the same reason. Accordingly, it ordered delivery of the contested stock certificates and promissory notes to claimant.
The executor's appeal is predicated solely upon the court's rulings on the statutes of limitations and "laches."
Before we can intelligently determine how the respective statutes of limitations cited, or "laches," apply to the facts before us, we must first categorize the legal effect of decedent's failure to carry out certain ministerial functions required of him under his agreement with the Foundation as to the transfer; and, secondly, we must characterize the effect of the execution and delivery of the notes in question to himself, personally, rather than to the Foundation.
We hold that decedent's failure to transfer the stock in question created a resulting trust, which may be defined, for our purposes, as one in which a party, through no actual or constructive fraud, becomes invested with legal title, but holds that title for the benefit of another, although without expressed intent to do so, because of a presumption of such intent arising by operation of law. Farmers' & Traders' Bank v. Kimball Milling Co., 1 S.D. 388, 47 N.W. 402.
Decedent's failure to transfer the stock occurred in his capacity as an original contracting party to the agreement, discussed above, rather than in his capacity as officer and director of the other contracting party. Under these circumstances, we hold that he was a trustee under a resulting trust. The fact that in this first capacity he was the party originally holding the legal title to the stock, rather than one to whom it was transferred by another, does not affect the equities involved; and the original situs of the title does not remove this incompleted transfer from the category of a resulting trust.
Decedent's actions strongly indicate that he viewed, and treated, the agreement with claimant to transfer the stock as operational and in full effecte. g., he took his annuity payment and other benefits under the agreement; he caused claimant's books to reflect an actual transfer of the subject stock, even though such transfer was never actually made; he transferred the other assets involved; and he acted in every other respect as though the entire agreement had been accomplished, giving no indication to the contrary. Apparently, only mere inadvertence on his part prevented him from fully carrying out the terms of the agreement by formally executing and transferring the contested stock.
With regard to the subject promissory notes, it is undisputed that the payee of the notes was decedent, individually, rather than the claimant Foundation, or decedent as a fiduciary thereof, even though the evidence clearly shows that decedent, individually, had no right to the proceeds from these notes, and that the Foundation was the rightful holder thereof, because it had paid the entire consideration for the notes. However, it is equally clear that for whatever reason the notes *989 were made payable to decedent, individually, there is absolutely no evidence showing any intent on his part to treat them as his own, or to exercise ownership hostile to that of the Foundation. The notes were placed in a safe-deposit box, along with stock which belonged to the Foundation, and were kept there with other documents; they remained there, apparently undisturbed, until decedent's death. Therefore, since the elements necessary to creation of a resulting trust are present, we rule that these notes were also the objects of a resulting trust, and that decedent was the trustee thereunder.
The executor argues, however, that if there were any trust relationship in the instant case, it was constructive, and not resulting. We do not agree.
A resulting trust carries into effect the presumed intent of the parties while a constructive trust defeats the intent of one of them. Sacre v. Sacre, 143 Me. 80, 55 A.2d 592, annotated at 173 A.L.R. 1261.
Necessary to most constructive trusts is the presence of fraud (active or constructive) or duress, or abuse of confidence by commission of a wrong, or some other form of unconscionable conduct or questionable means by which the trustee gains his title. Botkin v. Pyle, 91 Colo. 221, 14 P.2d 187. Furthermore, the theoretical reason for the imposition of constructive trusts is that unjust enrichment should not occur, 5 A. Scott, The Law of Trusts. § 404.2 (3d ed.). The facts before us do not show any advantage or unjust enrichment to Rabb during his lifetime arising from his holding of bare legal title to the stock and notes.
We find no evidence of any of the factors mentioned in the foregoing paragraph in the instant case. Therefore, these were not constructive, but resulting, trusts, and decedent held both the stock and promissory notes involved for the benefit of claimant Foundation as a resulting trustee.
We proceed, then, to a consideration of whether or not the statutes of limitations or "laches" apply to these two trusts.

STATUTES OF LIMITATIONS
The question arises as to when the statutes of limitations cited began to run against the claimant on any action arising under these trusts. We hold that they could not begin to run against claimant until there was a repudiation of the trusts. Archuleta v. Archuleta, 160 Colo. 32, 413 P.2d 704; Whatley v. Wood, 148 Colo. 349, 366 P.2d 570; Warren v. Adams, 19 Colo. 515, 36 P. 604.
Repudiation, however, occurs only when the trustee, by word or action, shows an intention to abandon, renounce, or refuse to perform under, the trust. Continental Casualty Co. v. Boerger, 389 S.W.2d 566 (Tex. Civ.App.); Iowa State Savings Bank v. Black, 91 Iowa 490, 59 N.W. 283. There is no evidence in the instant case from which a repudiation can be inferred prior to Rabb's death. Decedent's actions, cited supra, indicate the contrary. For this reason, Goeddel v. Aircraft Finance, Inc., 152 Colo. 419, 382 P.2d 812, relied upon heavily by the executor, is not applicable.
There being no repudiation of either trust created, the statutes of limitations cited did not begin to run against the claimant in the instant case until Rabb's death.

LACHES
5 A. Scott, The Law of Trusts, § 409 (3d ed.), states our position regarding the applicability of laches to the situation before us. There, it is said:
"The beneficiary of a resulting trust, like a beneficiary of an express trust, may be barred by laches from enforcing the trust. In the case of a resulting trust, as in the case of an express trust, however, the beneficiary is not barred from enforcing the trust merely by lapse of time. He is barred only if the trustee repudiates the trust to his knowledge and thereafter he takes no proceedings against the trustee for so long a time that it is inequitable to permit him to enforce the trust. [citing Taylor v. Taylor, 150 Colo. 304, 372 P.2d 449] * * * *990 A resulting trust, however, involves a fiduciary relationship between the trustee and the beneficiary, although the relation may not be as intense as in the case of an express trust. A fiduciary is not entitled to rely upon the laches of his beneficiary as a defense, unless he repudiates the relation to the knowledge of the beneficiary. In jurisdictions in which there is a statute of limitations applicable to equitable interests, the statute does not apply to express trusts or to resulting trusts. [here the author cites Vandewiele v. Vandewiele, 110 Colo. 556, 136 P.2d 523.]" (Footnotes omitted.)
There, again, being no evidence of repudiation in the instant case, the court was correct in ruling that "laches" would not protect the estate.
Judgment is affirmed.
DWYER and ENOCH, JJ., concur.