2002 ME 132

**Ray COREY et al.**

v.

**Darrian COREY**

**Docket No. Aro–02–20.**

Supreme Judicial Court of Maine.

Argued: June 10, 2002.
Decided: Aug. 8, 2002.

Harold Stewart, Esq. (orally), Presque Isle, Scott Hunter, Esq., Caribou, for the plaintiffs.

J. Hilary Billings, Esq. (orally), Billings & Silverstein, Bangor, for the defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Todd and Kelly Corey appeal from a judgment entered in Superior Court (Aroostook County, *Warren, J.*) approving a settlement between Ray and Sheila Corey, Todd's parents, and the guardian ad litem for Darrian Corey, Todd and Kelly's minor daughter. Ray and Sheila sued their granddaughter Darrian to impose a constructive trust on real property that was purchased in her name with $117,000 they provided. Because the court did not abuse its discretion in concluding that the settlement was fair, reasonable, and in Darrian's best interest, we affirm the judgment.

[¶ 2] Darrian was born in February 1997. Her parents, Todd and Kelly, resided in Westfield, where Todd ran a potato brokerage business. Ray and Sheila, Todd's parents, had recently moved to Nebraska from Aroostook County, where Ray had also brokered potatoes. In July 1998 Todd signed a purchase and sale agreement to buy a house in Mars Hill from his friend Scott McCrum and Scott's wife Barbara. Scott McCrum was anxious to sell because his business was almost bankrupt. With his creditors' consent he agreed to take the appraised value of $115,000 even though he and Todd believed the house was worth substantially more.

[¶ 3] In August, Ray and Sheila loaned Todd $10,000 for his business. Todd attempted to obtain a commercial loan to purchase the house from the McCrums but was unable to get full financing. One lender tentatively agreed to partial financing and Todd asked Ray for a $37,000 loan for the balance, explaining that the property was undervalued and could be resold for a profit. Ray declined to make this loan but said he would be willing to finance the entire purchase price. By late September Todd was anxious to close the deal quickly. According to Ray, Todd told him that if the closing did not occur, he would lose the

$25,000 deposit he had put down, which would put his business in peril and make it impossible for him to repay the $10,000 loan. As Ray subsequently learned, there was no such deposit. Todd, however, was on the verge of bankruptcy, and Scott McCrum was also anxious to complete the sale so that *he* could file for bankruptcy. It was decided at the last minute to put Darrian's name on the deed to avoid Todd's creditors and to avoid capital gains taxes for Ray and Sheila. It is not clear whose idea it was to place title in Darrian's name. Ray testified that it was Todd's, and Todd testified that it was Ray's, but it appears they both knew about it. The attorney who represented Todd and Scott McCrum in the real estate transaction testified that he told Todd it would be better to establish a trust to hold the property for Darrian's benefit, but Todd told him to put title in Darrian's name anyway to avoid the expense and/or delay that would be caused by preparing a trust. Ray and Sheila sent the attorney a bank check for $117,000 to cover the purchase price and closing costs (of which $98.82 was refunded to them), and the closing took place on September 28, 1998.

[¶ 4] On the crucial issue of Ray and Sheila's intent in providing the money, Ray testified that he understood from his conversations with Todd that Ray and Sheila would be repaid the $117,000 without interest when the house was resold, which he expected would be in approximately six to nine months, with the profit to go in trust to Darrian. Ray understood that his and Sheila's interest would be protected, though he never asked for a mortgage or promissory note. Todd would neither classify the money as a gift nor deny that it was a loan, but testified that he did not know his father's intent. Kelly testified that the money was a gift, but her knowledge came only from Todd. Darrian's

guardian ad litem testified that he concluded that Ray was a much more credible witness than Todd and had not intended to make a gift.

[¶ 5] Todd filed a bankruptcy petition the day after the closing; he had not told Ray that he intended to do so. Todd pleaded guilty to federal criminal charges in January 1999. Some conflict between Ray and Todd followed, apparently focusing on Ray and Sheila's inability to use the Mars Hill property as collateral for a business loan. Todd and Kelly have insured the house and resided there with Darrian, but at the time of the hearing they had not paid all the property taxes.

[¶ 6] In October 1999, Ray and Sheila filed a complaint against Darrian asking the court to impose a constructive trust on the property and order a sale for their benefit. Todd and Kelly filed an answer as Darrian's next friends but stated that a guardian ad litem should be appointed because they had a conflict of interest. Ray and Sheila moved for appointment of a guardian ad litem, and the court (*Pierson, J.*) granted the motion and appointed a guardian. The guardian, Ray, and Sheila reached a settlement pursuant to which a constructive trust would be imposed and

the property would be sold. The first $20,000 in proceeds would go to Darrian or her conservator, the next $116,901.18 to Ray and Sheila, and anything above that to Darrian or her conservator; Todd and Kelly were to be allowed to live in the house with Darrian as long as they paid the property taxes and insurance premiums. The guardian filed a motion to approve the settlement, to which Todd and Kelly objected. At the hearing on the motion, the guardian testified, and the parties submitted as stipulated exhibits the deposition testimony of Ray, Sheila, Todd, Kelly, and the real estate transaction attorney, along with a March 2001 appraisal that valued the property at $160,000. The court approved the settlement, and Todd and Kelly brought this appeal.

[¶ 7] Title 14 M.R.S.A. § 1605 (Supp.2001)[1] requires that the court approve a settlement on behalf of a minor, whether the minor is plaintiff or defendant.[2] Although we have not previously articulated a standard to be used in evaluating such settlements,[3] we agree with the federal district court that the court "must review the terms of the compromise and settlement and assure itself that the settlement is fair, reasonable and in the best

---

1. Title 14 M.R.S.A. § 1605 provides in relevant part:

   No settlement of any action brought in behalf of an infant by next friend or defended on the infant's behalf by guardian or guardian ad litem is valid unless approved by the court in which the action is pending, or affirmed by an entry of judgment.... An order approving such a settlement has the effect of a judgment. The court may make all necessary orders for protecting the interests of the infant, including requiring that funds be disbursed through establishment of a trust, and may require the guardian ad litem or next friend to give bond to truly account for all money received in behalf of the infant.

2. We reject Todd and Kelly's argument that the case could not be settled without their

consent. They initially notified the court of a conflict between their interest and Darrian's. Once a guardian ad litem was appointed it was appropriate for the guardian to have the authority to accept a settlement, subject to the court's approval.

3. We discussed M.R. Civ. P. 17A, the rule requiring court approval of settlements of actions brought on behalf of minors, in *Scott v. Lipman & Katz,* 648 A.2d 969 (Me.1994), but the substantive issue in that case concerned the approval of the attorney fees. The case was remanded to the trial court to reconsider the attorney fees, *id.* at 976, in light of the statute placing limitations on such fees, *id.* at 971, nn. 1, 2.

interests of the minor." *Holbrook v. Andersen Corp.*, 756 F.Supp. 34, 38 (D.Me. 1991) (applying Maine law). Since this evaluation involves the weighing of various factors and the assessment of the likely legal and factual outcome if the case were to proceed to trial, our review is for abuse of discretion.

[¶ 8] The motion court's analysis of the settlement in its decision focused on the facts. The court concluded that the deposition testimony strongly supported Ray and Sheila's contention that they provided the $117,000 with the understanding that they would be repaid. This conclusion was reinforced by the court's deference to the guardian ad litem's view that Ray would be a more credible trial witness than Todd, especially given Todd's recent federal criminal convictions. The court also noted that it was in Darrian's best interest to change the current situation, where she is the landlord and her parents are living rent-free in her house. These factual observations are supported by the record.

[¶ 9] Todd and Kelly contend primarily that the $117,000 was a gift as a matter of law. Even if, as Todd and Kelly argue, Ray and Sheila would have the burden at trial of disproving a gift by clear and convincing evidence, it is probable that they could meet that burden, since the overwhelming evidence was that Ray lacked donative intent. *See Westleigh v. Conger*, 2000 ME 134, ¶ 7, 755 A.2d 518, 519 (elements of inter vivos gift are donative intent, delivery with intent to surrender present and future dominion, and acceptance by donee).

[¶ 10] Ray and Sheila's complaint sought, and the court's order approving the settlement imposed, a constructive trust on the property. A constructive trust is an equitable remedy imposed by the court regardless of the parties' intentions in order to prevent unjust enrichment. *Thomas v. Fales*, 577 A.2d 1181, 1182–83 (Me.1990); *Sacre v. Sacre*, 143 Me. 80, 94, 55 A.2d 592, 600 (1947); *see also* RESTATEMENT OF RESTITUTION § 160 (1937). A constructive trust will be imposed on property when title has been acquired by, inter alia, fraud or mistake. *Chandler v. Dubey*, 325 A.2d 6, 8 (Me.1974); *Sacre*, 143 Me. at 94, 55 A.2d at 600. There is evidence here of both fraud and mistake. Ray testified that Todd lied to him about the deposit to induce him to pay the $117,000 and that Todd did not disclose to him either the bankruptcy or the criminal charges. Ray's understanding of the legal arrangements could likely be classified as a mistake—not a mistake about whose name would be on the deed, because he apparently knew that Darrian's would be, but a mistake about the legal effect of that fact on his and Sheila's right to be repaid.

[¶ 11] The law and the facts show that the probable result of a trial would have been the imposition of a constructive trust as prayed by Ray and Sheila rather than a finding of an inter vivos gift in favor of Darrian.[4] On that basis, it was within the court's discretion to conclude it was reasonable and in Darrian's best interest to settle the case.

[¶ 12] Todd and Kelly suggest that the terms of the settlement were unreasonable because Darrian could not have done any worse at trial. They are simply wrong: if

---

4. For this reason we need not consider Ray and Sheila's argument on appeal that a resulting trust in their favor arose when the property was conveyed to Darrian and they paid the

consideration. *See Thomas v. Fales,* 577 A.2d 1181, 1183 n. 3 (Me.1990); RESTATEMENT (SECOND) OF TRUSTS §§ 440–43 (1959).

the court had ordered the house sold after trial, any sale for less than $137,000 would mean Darrian would obtain less money than under the settlement. The house was appraised at $160,000, but as the court observed, that does not guarantee a sale at that price; in addition to the uncertainties inherent in the real estate market, the guardian ad litem testified that the sales price could depend in large part on whether a new potato processing plant is built nearby.

[¶ 13] Todd and Kelly also claim that the settlement is unreasonable because Darrian should have been guaranteed more than $20,000. Of course, a guarantee of more than $20,000 would be better for Darrian, but since she could have received less, and the settlement does not prevent her from getting more as long as Ray and Sheila are fully repaid, the negotiated figure of $20,000 was reasonable. Accordingly, the court did not abuse its discretion in granting the motion to approve the settlement.

The entry is:

Judgment affirmed.